**TEXAS CO. v. LEA RIVER LINES, Inc.**
(two cases).

**THE LRL 104.**

**THE TADPOLE.**

**THE NBC 540.**

**THE AZTEC.**

**Nos. 11016 and 11017.**

United States Court of Appeals
Third Circuit.

Argued May 21, 1953.

Decided July 20, 1953.

William Prickett, Wilmington, Del., for appellant.

Anthony V. Lynch, Jr., New York City (Abel Klaw, Wilmington, Del., and Pyne, Lynch & Smith, New York City, on the brief), for respondent.

Before MARIS, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

These two actions grow out of separate maritime mishaps involving the same parties in the same relationship to each other on different occasions. In each case libellant, The Texas Company, has sued respondent, Lea River Lines, Inc., for loss of libellant's property during transportation by

water in respondent's barge in tow of respondent's tug. This carriage was undertaken by respondent pursuant to a contract in which it agreed that for a period of one year it would engage certain of its tugs and barges in the transportation of libellant's petroleum products over certain inland water routes. Libellant agreed to pay freight at specified rates per ton mile.

Each complaint alleges that, by reason of the fault of respondent in the navigation of one of its tugs, its barge in tow was so damaged that cargo consisting of libellant's petroleum products leaked out and was lost. After trial the district court found for libellant in each case and respondent has appealed.

To dispose of these appeals it will be necessary to consider two questions: (1) whether the parties agreed in their contracts that respondent be free of responsibility for any cargo loss which might result from its faults in navigation and (2) whether such an agreement, if made, is lawful and binding.

In their contract the parties stipulated that "insurance on the cargo transported hereunder shall be carried by and at the expense of The Texas Company for its sole benefit." Another section of the contract entitled "Release" provided as follows:

"The transporting of the cargo under this contract is undertaken at the sole risk of the cargo carried, insofar as loss or damage to such cargo is concerned, and neither the vessel, towboat, tugboat, barges or other equipment used or employed by the Owner in the performance of his obligations hereunder, nor the Owner, shall be liable for any loss of or damage to such cargo, unless due to negligence on the part of the Owner and/or his servants in the handling, care and custody of the cargo and provided also that the Owner shall have exercised due diligence to make such vessel, towboat, tugboat, barges and other equipment seaworthy and capable of performing the voyage they are to undertake."

The district court concluded that the language in the excepting clause of the release

section expressly stating that the respondent shall be responsible for negligence in the "care and custody of the cargo" imposed upon it liability for any negligence in navigation which should cause cargo damage or loss.

We think this construction gives the quoted phrase abnormally broad meaning with the result that the release section as a whole and the quoted insurance provisions are left pointless. The opening stipulation of the release section that "the transporting of the cargo under this contract is undertaken at the sole risk of the cargo carried, so far as loss or damage of such cargo is concerned" and the provision for insurance of the cargo by the shipper for its sole benefit, read together, reveal a purpose to relieve the carrier of some significant responsibility it might otherwise bear for the safe transportation of the cargo. But if the exception which follows is read as comprehending any fault of the carrier, whether in navigating the vessel or in shipboard provision for storing, securing and safeguarding the cargo, then the exception becomes coextensive with the release and the whole section is made meaningless. Moreover, the shipper is revealed as contracting to insure a risk which the contract imposes solely on the carrier.

We cannot believe the parties intended so strange a bargain. We avoid it by viewing the words of the excepting phrase "care and custody of the cargo" as comprehending acts and omissions distinct from the navigation of the vessel. And we think this limitation accords with ordinary understanding of the words used. Cf. Philippine Sugar Centrals Agency v. Kokusai Kisen, etc., 2 Cir., 1939, 106 F.2d 32; The Persiana, 2 Cir., 1911, 185 F. 396. Indeed, if this "care and custody" language is contrasted with the opening general statement of the release which encompasses "the transporting of the cargo" we think it apparent that the parties have used words apt to distinguish between consequences of navigation and consequences of shipboard disposition and protection of cargo. We conclude that the contract means that the respondent is to be relieved of liability for

cargo loss caused by faulty navigation. And in these cases libellant predicates liability solely upon such negligence in navigation.

It remains to consider whether such contractual exemption from liability is lawful.

Libellant bases a challenge to the legality of such an agreement upon the so-called Wash Gray case, Compañia de Navegacion, Interior, S. A. v. Fireman's Fund Ins. Co., 1928, 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787, where Mr. Chief Justice Taft said, "* * * if it be true, as the appellant says, that, by special agreement, the canal-boat was being towed at her own risk, nevertheless, the steamer is liable, if, through the negligence of those in charge of her, the canal-boat has suffered loss." 277 U.S. at pages 73–74, 48 S.Ct. at page 461. Libellant here states as the rule of the Wash Gray case that a tower cannot, by contract that towage is to be at the risk of the tow, relieve itself from liability for damage to the tow caused by its negligence in towing. But assuming this is a correct statement of legal principle, it does not cover this case. It applies to the determination of rights and duties between tug and tow where these units of a flotilla represent separate interests. It has nothing to do with the responsibility of a private carrier to a shipper where the carrier alone controls the entire means of transportation, whether a single vessel or tug and tow.

This distinction was made explicit in Sacramento Navigation Co. v. Salz, 1928, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 where the Supreme Court analyzed a similar situation this way:

"The libel recites that it is 'in a cause of towage,' and in argument this is strenuously insisted upon. Towage service is the employment of one vessel to expedite the voyage of another. Here, while there was towage service, the contract actually made with respondent was not to tow a vessel, but to transport goods, and plainly that contract was a contract of affreightment. * * *

"The fact that we are dealing with vessels, which by a fiction of the law are invested with personality, does not require us to disregard the actualities of the situation, namely, that the owner of the tug towed his own barge as a necessary incident of the contract of affreightment, and that the transportation of the cargo was in fact effected by their joint operation. * * *" 273 U.S. at page 328, 47 S.Ct. at page 369.

Finally, and we think conclusively, as recently as 1941 the Supreme Court in Commercial Molasses Corp. v. New York T. Barge Corp., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89, characterized just such an agreement as we have here as a contract of affreightment between shipper and private carrier in which any limitation of liability upon which the parties have agreed may be enforced between them.

It follows that the valid agreement of the parties here has relieved respondent of responsibility for loss of cargo through such negligence in navigation as these complaints charge.

The judgments will be reversed.