292 F.2d 569
 INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,
v.
Samuel Hallock DU PONT, Jr. d/b/a duPont Air Interests, Appellee.
Samuel Hallock DU PONT, Jr., d/b/a duPont Air Interests, Appellant,
v.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.
 No. 18400.
 United States Court of Appeals Fifth Circuit.
 July 19, 1961.
 Rehearing Denied September 11, 1961.
 
 David W. Dyer, Samuel A. Brodnax, Jr., Miami, Fla., Smathers, Thompson, & Dyer, Miami, Fla., of counsel, for appellant.
 Raymond J. Dwyer, Wesley G. Carey, Miami, Fla., Carey, Goodman, Terry, Dwyer & Austin, Miami, Fla, of counsel, for appellee.
 Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 Samuel Hallock duPont Jr., the appellee, operated a business of chartering aircraft. In the spring of 1958 duPont switched his business from chartering, with pilots furnished, to renting, without pilots, under a license granted to him by Hertz Rent A Plane System, Inc. Indemnity Insurance Company of North America, the appellant, issued a policy of aircraft insurance, dated March 27, 1958, to duPont which, under Schedule C, provided indemnity against hull loss or damage; and, under Schedules D, E and F, provided coverage for bodily injury and property damage. The policy contained exclusionary clauses among which were the following:
 
 
 2
 "This policy does not apply:
 
 
 3
 "(g) With respect to Coverages A, B and C to any loss or damage caused by or resulting from any of the conditions in sub-paragraphs (1) and (2) which appear below;
 
 
 4
 "(1) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending, or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by any agent of any such government, power, authority or forces; or
 
 
 5
 "(2) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority or risks of contraband or illegal transportation or trade."
 
 
 6
 Bearing the same date as the policy and attached to it is Endorsement No. 1 which provided, among other things:
 
 
 7
 "(1) As respects Coverages C. D. E. & F.:
 
 
 8
 * * * * * *
 
 
 9
 "C. The aircraft insured will be piloted as follows:
 
 
 10
 "1. Twin engined aircraft by S. H. duPont, Jr., and any pilot employed by him holding a valid and current Commercial Multi-Engined Rating; also any other pilot approved by S. H. duPont, Jr. (or anyone to whom he delegates the power of pilot approval) who holds a valid and current Commercial Multi-Engined Rating and who has logged not less than 500 hours of Multi-Engined First Pilot time.
 
 
 11
 * * * * * *
 
 
 12
 "(3) As respects Coverages D, E, and F.
 
 
 13
 * * * * * *
 
 
 14
 "C. When the named insured makes aircraft insured hereunder available for rental or charter under license with Hertz Rent A Plane System, Inc. This policy covers as additional named insureds, the renter, pilot(s) and his employer, and passengers of a rented aircraft where the pilot is an employee of the named insured, Hertz Rent A Plane System, Inc., The Hertz Corporation and all subsidiary or associated corporations (now existing or hereinafter organized) and licensees of Hertz System, Inc."
 
 
 15
 Endorsements numbered 2, 3 and 4 were added at or as of the time the policy was issued. Endorsement No. 2 provided for reporting and the rates for the premiums on the various classes of coverage. Endorsements numbered 3 and 4 are not pertinent to the issues before us.
 
 
 16
 Endorsement No. 5, referred to as the Hertz endorsement, was added to the policy. It provided:
 
 
 17
 "Effective July 21, 1958, it is understood and agreed that paragraph 3C of Indorsement No. 1 is amended to read as follows:
 
 
 18
 "When the insured named in Item No. 1 of the Declarations makes aircraft insured hereunder available for rental or charter under license with Hertz Rent A Plane System, Inc., this policy:
 
 
 19
 "I. As respects Coverage C. —
 
 
 20
 "Insofar as it is required by the Hertz Standard Rental Agreement, the company waives its right under the policy conditions, to subrogate against the renter pilot for any loss of or damage to the rented aircraft.
 
 
 21
 "II. As respects Coverages D, E and F is amended to cover in accordance with the following paragraphs:
 
 
 22
 "1. The following as additional named insureds:
 
 
 23
 "A. Hertz Rent A Plane System, Inc.
 
 
 24
 "B. The Hertz Corporation and all wholly owned or controlled subsidiaries thereof (now in existence or hereafter organized or acquired).
 
 
 25
 * * * * * *
 
 
 26
 "2. With respect to the above named additional named insureds:
 
 
 27
 "A. The insurance afforded under this policy shall be excess insurance over any other valid and collectible insurance available to the named additional insureds, any rentor pilot or the employer of any rentor pilot, either as an insured or otherwise, under a policy applicable with respect to aircraft or otherwise, against a loss covered under this policy.
 
 
 28
 "B. It is agreed that in the event of bodily injury to an insured or to an employee of one or more of the insureds that this policy shall cover any insured not employing the person so injured in the same manner as if separate policies had been issued to each insured, except that the limits of liability for all insured shall not exceed the limits of liability set forth in the policy to which this indorsement is attached.
 
 
 29
 "C. It is agreed that in the event of damage to property owned by, rented to, in charge of or being transported by any one or more insureds, for which another insured is or may be held liable, then this policy shall cover such insured against whom claim is or may be made in the same manner as if separate policies had been issued to each insured, except that the limits of liability for all insureds shall not exceed the limits of liability set forth in the policy to which this indorsement is attached.
 
 
 30
 "D. By reason of the coverage afforded in paragraphs B and C above, the paragraph in the printed `Conditions' of the policy entitled `Severability of Interests' is deleted.
 
 
 31
 "E. This policy does not apply to bodily injury to or sickness, disease or death of any employee of any named additional insured while engaged in the duties of his employment.
 
 
 32
 * * * * * *
 
 
 33
 "4. With respect to the interests of the named additional insureds only, cancellation or change of this policy by the insurer shall not be effective until 30 days after mailing of written notice thereof to:
 
 
 34
 "Hertz Rent A Plane System, Inc. "218 South Wabash Avenue "Chicago 4, Illinois
 
 
 35
 "Attention: Insurance Division.
 
 
 36
 "5. This policy does not apply to any insured who operates or who permits the operation of the aircraft: (A) in violation of its civil aeronautics administration airworthiness certificate, or operational record, or in violation of the terms of any civil aeronautics administration pilots certificate; (B) in violation of any regulations of the Civil Aeronautics Administration applicable to acrobatic flying, instrument flying, repairs, alterations and inspections, night flying, minimum safe altitudes, and student instruction; (C) for any unlawful purpose or for the purpose of closed course racing, any form of crop dusting, spraying or seeding, or any form of hunting; (D) in any manner which requires a special permit or waiver from the Civil Aeronautics Administration, whether granted or not.
 
 
 37
 "6. In the monthly reports made by the insured in accordance with the provisions of Indorsement No. 2 aircraft used under license with Hertz Rent A Plane System, Inc. will be designated by the letter `H' on such report and on those aircraft the insured agrees to pay premium at the following rates:
 
 
 38
 "Twin Engined Aircraft:
 
 
 39
 "Coverage C-.01 per $100.00 of insured value per day (or part thereof) at risk.
 
 
 40
 "Coverages D, E, F-1.32 per aircraft flying hour (or part thereof) flown.
 
 
 41
 "Single Engined Aircraft:
 
 
 42
 "Coverage C-.018 per $100.00 of insured value per day (or part thereof) at risk.
 
 
 43
 "Coverages D, E, F-1.02 per aircraft flying hour (or part thereof) flown."
 
 
 44
 Endorsement No. 7 was issued some time later but was, by its terms, made effective as of June 21, 1958. The effective date should have been July 21, 1958, but the error, if such it was, has no bearing on the question before us. Its provisions were:
 
 
 45
 "Effective from inception it is hereby understood and agreed that Clause No. 5 of paragraph II of Indorsement No. 5 is amended to read as follows:
 
 
 46
 "With respect to such insurance under this indorsement as is applicable to renter only, this policy does not cover any renter who operates or permits the operation of the aircraft insured.
 
 
 47
 "A. In violation of its Civil Aeronautics Administration Airworthiness Certificate, or operational record or in violation of the terms of any Civil Aeronautics Administration Pilots Certificate.
 
 
 48
 "B. In violation of any regulations of the Civil Aeronautics Administration applicable to acrobatic flying, instrument flying, repairs, alterations and inspections, night flying, minimum safe altitudes, and student instruction.
 
 
 49
 "C. For any unlawful purpose or for the purpose of closed course racing, any form of crop dusting, spraying or seeding, or any form of hunting.
 
 
 50
 "D. In any manner which requires a special permit or waiver from the Civil Aeronautics Administration, whether granted or not."
 
 
 51
 On August 16, 1958, C. W. Hormel rented from duPont, using a Hertz Standard Rental Agreement, a twin-engined 1955 Aero Commander airplane to be flown by Hormel's pilot, Guillermo Verdeguer, for the stated purpose of transporting Hormel from Miami, Florida, to Birmingham, Alabama. The plane, flown by Verdeguer, flew over Cuba with an overload of arms and ammunition aboard intended for Cuban revolutionaries. The plane, while over Cuba, was fired upon by the armed forces of the Cuban Government and it was unable to land. The plane was then flown several hundred miles, and, being out of fuel and having an engine disabled, perhaps from gunfire, it was ditched in or near Guantanamo Bay. The crash resulted in a total loss of the aircraft. The crash, so the jury found, was caused by the action of the Cuban Government in defending against insurrection and rebellion while the occupants of the airplane were engaged in flying arms and ammunition for the purpose of the revolution.
 
 
 52
 The insurance company denied liability and its grounds for doing so were, primarily, that Verdeguer did not have the qualifications as a pilot which were required by the policy and that the loss resulted from conditions which excluded coverage under the warlike action and rebellion clauses. duPont sued. The contention was made by duPont that there was an ambiguity as to whether Endorsements No. 5 and No. 7 eliminated the war and insurrection exclusionary clauses as to Schedule C hull coverage. The district court, concluding that there was such an ambiguity, admitted over objections the parol testimony of duPont as to conversations with and representations of agents of the insurance company that they had procured hull coverage on rental planes protecting him, as owner, regardless of the use of the planes by the renter pilots. In response to special interrogatories the jury found that duPont had asked the insurance agents to procure such coverage, that they told him they could do so and told him they had done so. The jury was asked whether the entire insurance agreement included the printed policy, the conversations between duPont and the agents and the endorsements. The jury answered "No."
 
 
 53
 A temporary pilot's certificate had at one time been issued to Verdeguer by the Federal Aviation Agency, but it had expired several months before the events which gave rise to this litigation. At the time of the ditching of the insured aircraft, Verdeguer held a Cuban pilot's certificate but none issued by the United States or any of its agencies. The insurance company asserted that this violated the policy requirements for the pilot's qualification. The Hertz rental manager undertook, as agent for duPont, to check the qualifications of Verdeguer and examined his certificate issued by the Federal Aviation Agency. He "did not notice," he testified, whether or not the certificate was current or had expired, although he imagined that if it had expired, Verdeguer should not have been permitted to fly the insured airplane. There was other evidence that Verdeguer had all of the necessary skills and experience as a pilot, and duPont contended that the absence of the certificate was not a material breach which voided coverage of the policy.
 
 
 54
 The insurance company filed a counter-claim against duPont who admitted liability on the counterclaim in the amount of $7,890.04. The insurance company moved for judgment on the counterclaim and the motion was granted.
 
 
 55
 The district court entered, on January 29, 1960, judgment against the insurance company for the stipulated value of the aircraft, $55,000, with attorney's fees of $6,875, aggregating $61,875, which was reduced by the amount of $7,890.04 asserted by the admitted counterclaim to a net judgment figure of $53,984.96. The court refused to enter judgment for duPont for interest from the date of his demand upon the insurance company. The insurance company has appealed and asserts before us, as it contended below, that the use of the airplane in aid of the Cuban revolution and its use by an unauthorized pilot have relieved it of any liability to which it might have otherwise been subjected. duPont has appealed and asks us to relate back to the time of his demand against the insurance company the time for the accrual of interest.
 
 
 56
 The parol testimony was received by the trial court with some misgivings, but the conclusion was reached that the court was required to receive and consider the oral testimony under the principles stated by this Court in Fidelity-Phenix Fire Insurance Co. v. Farm Air Service, Inc., 5 Cir., 1958, 255 F.2d 658. In the Fidelity-Phenix case the appellant insurer had written a fire policy on the contents of an airplane hangar. The property insured, as shown by a typed description in the policy, was "All contents [in] and Adjacent To Building Within 200' in the * * * airplane hangar." There was a printed clause in the policy which excepted from coverage intangibles of several described classes and "bullion, animals, motor vehicles and aircraft." An airplane of the insured was destroyed by fire while about 125 feet from the hangar. In a suit on the policy to recover the value of the loss of the plane the district court considered parol evidence, much of which was received without objection, to resolve an ambiguity in the insurance contract. The principle was recognized that the typewritten provisions of a policy are to be preferred over printed clauses, and under this rule the court was confronted with the question as to whether the comprehensive term "All contents" superseded the printed exclusion of aircraft. This question arose from an ambiguity in the insurance contract and parol evidence was properly admitted to disclose the meaning of the policy. The factual situation, the question presented, and the manner in which it is presented, are quite different in the case now before us.
 
 
 57
 As was said in the Fidelity-Phenix opinion, "A court called upon to determine the meaning of written contracts such as those here involved looks primarily to the language of the contracts after first placing itself as nearly as possible in the position of the parties to them at the time of their execution." 255 F.2d 658, 660. As said in a later case, "Where the terms of a written contract are plain and unambiguous they alone are looked to to ascertain their meaning." Fidelity & Casualty Company of New York v. Lott, 5 Cir., 1960, 273 F.2d 500, 502. See also John Hancock Mutual Life Insurance Co. v. Welsh, 5 Cir., 1959, 267 F.2d 152; Canal Insurance Co. v. Dougherty, 5 Cir., 1957, 247 F.2d 508. The same rule is applied by the Florida courts. 18 Fla.Jur. 330, Insurance § 447; Price v. Southern Home Insurance Co., 100 Fla. 338, 129 So. 748; L'Engle v. Scottish Union & National Insurance Co., 48 Fla. 82, 37 So. 462, 67 L.R.A. 581, 111 Am.St.Rep. 70, 5 Ann. Cas. 748. Unless there is an ambiguity in the terms of the policy the extrinsic evidence is not admissible.
 
 
 58
 Endorsement No. 1 has no bearing upon the hull coverage except to specify those by whom the aircraft might be piloted. Paragraph 3C of Endorsement No. 1 contemplates the use of Hertz Rent A Plane System by duPont and provides that upon such event the Hertz companies, the renter, pilot, his employer, and the passengers of a rented plane, shall become named insureds. This paragraph is not only, by the terms of the endorsement, restricted to coverage for property damage and bodily injuries, but it would be so in any event since those named and designated in Paragraph 3C would have no interest in and could not benefit from hull coverage. Endorsement No. 5 was required by Hertz. It is in lieu of Paragraph 3C of Endorsement No. 1. It is known as the Hertz Endorsement. Its purpose is apparent. The only portion of this endorsement which relates to hull coverage is in Part I. It requires the insurance company, under the condition stated, to waive its right of subrogation against the renter pilot for loss of or damage to a plane rented through Hertz. The other provisions of Endorsement No. 5 are contained in its Part II. By the terms of the endorsement these relate to coverage for bodily injury and property damage. It was duPont's position that no determination could be made from a reading of the policy and the endorsements as to whether paragraph 5 of Part II of Endorsement No. 5 was intended to apply to hull coverage as well as to coverage for property damage and bodily injury, and, hence, there was an ambiguity. The district court adopted this view.
 
 
 59
 In determining the meaning of a written agreement, a court will place itself, as nearly as possible, in the position of the parties at the time of the agreement. Fidelity-Phenix Fire Insurance Co. v. Farm Air Service, Inc., supra; Massey-Ferguson, Inc. v. Bent Equipment Co., 5 Cir., 1960, 283 F.2d 12. So placing ourselves, we find an endorsement being affixed in order to meet the requirements of Hertz, which had no interest whatever in the hull coverage, except to procure a waiver of subrogation against the pilots of planes rented by Hertz for liability for loss of or damage to the aircraft. The endorsement in all of its other provisions has a direct relationship to the Hertz System arrangement. We do not think that Paragraph 5 of Part II should be torn loose from its moorings and applied to hull coverage in view of the purpose of the endorsement to meet the requirement of Hertz and the express terms of the endorsement restricting its application to the coverage for property damage and bodily injury. The same is, of course, also true with respect to Endorsement No. 7 which was an amendment of and superseded Paragraph 5 of Part II of Endorsement No. 5. We do not think there was any ambiguity, and, hence, the parol evidence was not admissible. We conclude that the provisions of the original policy, excluding liability for loss or damage caused by or resulting from hostile or warlike action or in insurrection, rebellion, revolution or civil war, were not modified or superseded, in so far as hull coverage is concerned, by Endorsement 5 or Endorsement 7, although such endorsements did modify the exclusionary provisions with respect to the Schedules D, E, and F liability for bodily injuries and property damage. Applicable here is the principle stated by the Illinois Appellate Court in Yadro v. United States Fidelity & Guaranty Co., 4 Ill.App.2d 477, 124 N.E.2d 370, and quoted with approval by the Supreme Court of Florida in a case quite similar to the one before us. It was there said:
 
 
 60
 "It is common for liability policies to define hazards and specify the extent and limits of coverage of different risks. A court is without authority to reject some of the express statements of coverage and then declare that another coverage was intended to apply in all cases, for this would violate the principle that a court cannot under the guise of construction make a new contract for the parties." Haenal v. United States Fidelity & Guaranty Co., Fla., 88 So.2d 888, 890.
 
 
 61
 When the policy and the endorsements are construed without reference to the parol evidence it appears that the loss of the plane occurred under circumstances where liability for the loss was expressly excluded. It follows that the judgment against the insurance company must be set aside. The judgment, allowed by stipulation, for the insurance company should be entered as of the time of the judgment here reversed with costs. That the foregoing may be carried out, the judgment before us on appeal is reversed and the cause is remanded. It is not necessary to decide whether the absence of the required pilot's certificate by Verdeguer would have precluded recovery on the policy.
 
 
 62
 Reversed and remanded.