CONTINENTAL CASUALTY COMPANY,
Appellant,

v.

WESTINGHOUSE ELECTRIC SUPPLY
COMPANY, Appellee.

No. 25541.

United States Court of Appeals
Fifth Circuit.

Oct. 21, 1968.

Edward A. Perse, Wesley G. Carey, Carey, Dwyer, Austin, Cole & Selwood, Miami, Fla., for appellant.

Eugene C. Heiman, Richard E. Reckson, Heiman & Crary, Miami, Fla., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

PER CURIAM:

For the reasons set forth in the district court's opinion, a copy of which is attached hereto, the judgment is Affirmed.

United States District Court
Southern District of Florida
No. 66-40-Civ-CF

State of Florida for the use and benefit of
WESTINGHOUSE ELECTRIC SUPPLY COMPANY,
a division of
WESTINGHOUSE ELECTRIC CORPORATION,
a Pennsylvania corporation,

Plaintiff,

versus

DIPLOMAT ELECTRIC, INC., a Florida corporation, APGAR & MARKHAM CONSTRUCTION CO., INC., a Florida corporation, FIDELITY AND GUARANTY COMPANY OF MARYLAND, a Maryland corporation, and CONTINENTAL CASUALTY COMPANY, an Illinois corporation,

Defendants.

MEMORANDUM OPINION

The Court has diversity jurisdiction over the subject matter of and the parties to this action. For brevity, the parties to this cause will be referred to herein as follows:

WESTINGHOUSE ELECTRIC SUPPLY COMPANY as "WESCO"

DIPLOMAT ELECTRIC, INC. as "DIPLOMAT"

CONTINENTAL CASUALTY COMPANY as "CONTINENTAL"

WESLEY CONSTRUCTION CO. as "WESLEY"

AETNA CASUALTY & INSURANCE COMPANY as "AETNA"

APGAR & MARKHAM CONSTRUCTION CO. as "MARKHAM"

FIDELITY AND DEPOSIT COMPANY OF MARYLAND as "FIDELITY"

The complaint in this case consists of two counts. In the first count, WESCO sought recovery against DIPLOMAT, CONTINENTAL, WESLEY and AETNA for materials which WESCO claims it provided to DIPLOMAT as subcontractor in the construction of an office

building for Florida Power & Light Company by WESCO.

In the second count WESCO seeks recovery for electrical materials which it claims to have provided to DIPLOMAT as subcontractor in the construction of a public school building by APGAR as general contractor.

## COUNT I

For reasons which appear in the court's Order dated May 31, 1966, the claims which WESCO asserted against WESLEY, AETNA and CONTINENTAL were dismissed.

In Count I WESCO claims that DIPLOMAT ordered from WESCO and that WESCO delivered to DIPLOMAT electrical materials which were used by DIPLOMAT as subcontractor upon the Florida Power & Light job, of the total value of $102,866.19.

In its answer DIPLOMAT admitted that WESCO delivered some materials to it, but not all of the materials which were ordered; that WESCO delivered materials which were not ordered by DIPLOMAT, and that some of the materials which WESCO delivered were defective. In addition, DIPLOMAT contended that WESCO had executed and delivered to DIPLOMAT a document which had the legal effect of releasing DIPLOMAT of and from all obligations to pay for said materials.

The issues raised by this claim and these defenses were tried to the court without a jury. With respect to the delivery by WESCO to DIPLOMAT of electrical materials the proof shows and the court finds that WESCO did deliver to DIPLOMAT materials for the Florida Power & Light job as follows:

Light fixtures which were specifically designed and made for said job, of the value of    $97,934.45

Materials which were delivered to employees of DIPLOMAT at the WESCO warehouse, of the value of    2,106.06

Materials which were delivered to DIPLOMAT at said job site, of the value of    2,640.75

That the total amount which was due and unpaid from DIPLOMAT to WESCO as of the date of trial was $102,681.26, plus interest thereon.

The court finds and concludes that the document which DIPLOMAT relies upon as a release to it of legal obligation to pay for said materials does not in fact or in law release DIPLOMAT from said obligation, but rather has the limited effect of releasing the real property which constituted the Florida Power & Light job site of and from any claims of lien which WESCO may have claimed for the materials which it furnished. A careful inspection of the document discloses that its intention and purpose of releasing WESCO's lien on the real property was clear and unambiguous, and that it did not purport to release DIPLOMAT from paying for materials which it ordered and received from WESCO; and there was no evidence produced at the trial to the contrary. Indemnity Insurance Company of North America v. DuPont, Jr., 292 F.2d 569 (5th Cir. 1961); Atlantic Coast Line Railroad Co. v. Boone, 85 So.2d 834, 57 A.L.R.2d 1186 (Fla.1956).

## COUNT II

In the second count WESCO claims that it furnished electrical materials to DIPLOMAT as subcontractor for use in a public school building which was then under construction by APGAR as general contractor, and that the balance due from DIPLOMAT to WESCO for said materials was $15,541.63. The claims which WESCO makes for the recovery of this amount are made jointly and severally against DIPLOMAT and its surety CONTINENTAL and against the general contractor APGAR and its surety FIDELITY.

In defense of WESCO's claim, DIPLOMAT contends, as it did with respect to the first count, that WESCO delivered

materials which were ordered by DIPLO-MAT for the school job, but that DIPLO-MAT ordered certain materials for that job which were not delivered, that WESCO delivered certain materials which were not ordered by DIPLOMAT, and that other materials which WESCO delivered were defective. In addition, DIPLOMAT contends that on December 4, 1964, WESCO executed and delivered to APGAR and to the Board of Public Instruction of Dade County, for whom the school had been built, a release which had the legal effect of releasing and discharging DIPLOMAT of and from any liability to WESCO for the payment of said materials. DIPLOMAT's surety CONTINENTAL interposed the same defenses as did DIPLOMAT, and in addition thereto denied liability on the ground that the CONTINENTAL bond expressly provided that no suit could be brought upon the bond after the expiration of one year following the date upon which DIPLOMAT ceased to work on the school job as subcontractor.

APGAR and its surety FIDELITY defended WESCO's right to recovery by claiming that WESCO executed and delivered to APGAR a release which was executed and delivered in consideration of APGAR paying to DIPLOMAT the sum of $8,000 under an express obligation on the part of DIPLOMAT to pay said sum over to WESCO, which DIPLO-MAT did. APGAR and FIDELITY further defended on a basis of what they term an equitable estoppel which, more specifically stated, is the defense that APGAR paid to DIPLOMAT all the monies which were due from APGAR to DIPLOMAT upon the construction of the school only after and in reliance upon the release which WESCO had executed and delivered to APGAR.

Because of a difference in the parties, the issues and the subject matter herein, the hearing upon Count II was deferred until the hearing upon Count I had been completed. The controversy of Count II was likewise tried to the court without a jury upon the issues developed by WESCO's claim and the various defenses thereto.

█ The proof shows and the court finds that DIPLOMAT ordered from WESCO and that WESCO delivered to DIPLOMAT electrical materials which were used in the construction of said school building for which DIPLOMAT owed WESCO the sum of $14,922.60 as of the date of trial, plus interest.

The evidence shows that as of December 4, 1964 when WESCO executed and delivered to APGAR said release, APGAR owed DIPLOMAT the sum of $16,859.97, but had withheld payment thereof because of the contention by WESCO that DIPLOMAT had not paid WESCO for materials which WESCO furnished for the school job. On said date, a conference was conducted at the offices of APGAR, which was attended by the presidents of APGAR and DIP-LOMAT. WESCO's branch manager Kelley, and APGAR's secretary-treasurer, Jenkins. This conference was conducted for the purpose of discussing and resolving the obligation of APGAR to DIPLO-MAT and DIPLOMAT's obligation to WESCO after considerable discussion, WESCO executed and delivered to AP-GAR the release in question and AP-GAR paid to DIPLOMAT the sum of $8,000 in consideration for the release and with the understanding that DIPLO-MAT would forthwith pay over the said sum of $8,000 to WESCO. Kelley participated in this conference and executed said release on behalf of and under a power-of-attorney from WESCO. There was no evidence that the parties at the meeting agreed or intended that the release was not to become effective until and unless DIPLOMAT paid the full amount of the debt claimed by WESCO. In reliance upon said release APGAR thereafter fully paid DIPLOMAT for all the materials and labor which DIPLO-MAT performed on the school job as electrical subcontractor.

It was clearly the intention of WESCO to release APGAR, its surety and the

School Board. Moreover, an inspection of the release document will disclose that included therein was a specific certification that WESCO had paid all sales and use taxes which were due upon the materials that were involved, which discloses an intention of the parties that APGAR be released personally and that the release document was more than a release of lien rights against the realty; this is true because obligations in Florida for sales and use taxes create personal obligations rather than lien rights. More important, said school was being constructed for the Board of Public Instruction of Dade County, a political subdivision of the State of. Florida, with APGAR as principal and FIDELITY as surety under a bond as is required by § 255.05 of the Florida Statutes. That statute precludes the accrual of lien rights against public property and limits claimants to recovery upon the bond which the statute requires.

■ The proof shows and the Court finds that the release executed and delivered by WESCO had the legal effect of releasing and discharging APGAR and its surety FIDELITY of and from any liability to WESCO for the unpaid balance due upon the electrical materials. City of Fort Lauderdale ex rel. Bond Plumbing Supply Inc. v. Hardrives Company (2nd Dist.Fla.1964), 167 So.2d 339. The court further finds that WESCO is now estopped from denying the effectiveness of the release given by WESCO upon which APGAR relied when they paid DIPLOMAT in full under the subcontract, Texas Co. v. Lea River Lines, Inc. (3rd Cir.), 206 F.2d 55, 60.

■ There was no evidence of any, intention on the part of WESCO to release DIPLOMAT or its surety CONTINENTAL from the obligation to pay for materials supplied by WESCO to DIPLOMAT for the school job. The release was only executed in favor of APGAR, its successors and assigns and the School Board; nowhere on the release is there indicated any mention of or intent to extinguish its right of action against either DIPLOMAT or CONTINENTAL. Accordingly, the court finds that the document which DIPLOMAT and CONTINENTAL rely upon as a release to them of and from their legal obligation to pay for materials furnished by WESCO does not, in fact or in law, release DIPLOMAT or CONTINENTAL from said obligation.

■ The payment bond executed by CONTINENTAL as surety for DIPLOMAT provided that claimants who had not been paid for materials furnished to DIPLOMAT for the school job could sue on said bond so long as such suit was brought within one year following the date on which DIPLOMAT ceased work on that job. CONTINENTAL contends that suit was brought by WESCO after the expiration of one year following the date on which DIPLOMAT ceased work and thus WESCO is barred from a suit against CONTINENTAL on the surety bond. The court finds that no evidence was produced at the trial to disclose the date on which DIPLOMAT ceased its work on the school job. Therefore, it is impossible for the court to determine whether or not WESCO complied with the one year limitation provisin in the bond. However, even if WESCO failed to comply with the one year limitation provision in the bond, WESCO's suit would not be barred. CONTINENTAL admitted that their bond was not a required bond under § 255.05 of the Florida Statutes, F.S.A., and therefor the bond agreement must be treated simply as a contract under seal. Section 95.11 of the Florida Statutes, F.S.A. provides for a twenty year statute of limitations for actions on a contract under seal. In short, the bond attempts to reduce the twenty year limitation period within which suit can be filed to one year. But, § 95.03 of the Florida Statutes, F.S.A. provides in part that:

"Stipulations in contract shortening period of limitation illegal. * * * all provisions and stipulations contained in any contract whatever entered into after May 26, 1913 fixing the pe-

riod of time in which suits may be instituted under any such contract, or upon any matter growing out of the provisions of any such contract, at a period of time less than that provided by the statute of limitations of this state, are hereby declared to be contrary to the public policy of this state, and to be illegal and void. No court in this state shall give effect to any provision or stipulation of the character mentioned in this section."

Accordingly, the court finds that the one year limitation provision in the CONTINENTAL bond has no legal effect and that CONTINENTAL cannot deny liability to WESCO on its bond by reason of said limitation provision.

Hence, WESCO has established its claim that DIPLOMAT and CONTINENTAL are jointly and severally indebted to WESCO for materials which WESCO delivered to DIPLOMAT for the Miami Springs school job in the total sum of $14,922.60.

This memorandum opinion shall serve in lieu of separate findings of fact and conclusions of law for each of the two counts involved in this case. Counsel for Plaintiff shall submit an appropriate final judgment in accordance with the foregoing within fifteen days of the entry of this opinion.

DATED at Miami, Florida this 5th day of July, 1967.

(Signed) CHARLES B. FULTON
CHIEF JUDGE

cc: Darrey A. Davis, Esquire, Scott, McCarthy, Steel, Hector & Davis, First National Bank Building, Miami, Florida 33131.

Heiman & Crary, Suite 202, Eleven Fifty Bldg., Miami, Florida.

Milton E. Grusmark, Esquire, 407 Lincoln Road, Miami Beach, Florida.

Carey, Dwyer, Austin, Cole & Stephens, 650 Seybold Bldg., Miami Florida.