STATE of FLORIDA, for the Use and Benefit of WESTINGHOUSE ELECTRIC SUPPLY COMPANY, a division of Westinghouse Electric Corporation, a Pennsylvania corporation, and a division of Westinghouse Electric Corporation, a Pennsylvania corporation, Plaintiff,

v.

WESLEY CONSTRUCTION COMPANY, a Florida corporation, Aetna Casualty and Insurance Company, a Connecticut corporation; and Continental Casualty Company, a foreign corporation, Defendants.

Civ. No. 66–40.

United States District Court, S. D. Florida.

July 15, 1970.

Heiman & Crary, P. A., Miami, Fla., for plaintiff.

Patton, Kanner, Tietig & Segal, Miami, Fla., for defendant, Wesley Construction Co.

Carey, Dwyer, Austin, Cole & Selwood, Miami, Fla., for defendant, Continental Casualty Co.

## MEMORANDUM OPINION

FULTON, Chief Judge.

WESLEY CONSTRUCTION COMPANY entered into a contract with FLORIDA POWER AND LIGHT COMPANY whereby WESLEY agreed to construct for FLORIDA POWER AND LIGHT COMPANY an office building in the City of Miami, Florida. WESLEY, as principal and AETNA CASUALTY AND INSURANCE COMPANY, as surety, executed and delivered unto FLORIDA POWER AND LIGHT COMPANY a payment and performance bond. Thereafter WESLEY and DIPLOMAT ELECTRIC COMPANY entered into a subcontract agreement, whereby DIPLOMAT agreed to install electrical equipment in said building. DIPLOMAT as subcontractor, and CONTINENTAL CASUALTY COMPANY, as surety executed and delivered to WESLEY a subcontractor's performance bond. WESTINGHOUSE ELECTRIC SUPPLY COMPANY supplied to DIPLOMAT the electrical equipment which the latter installed in the FLORIDA POWER AND LIGHT COMPANY building. Nothing in writing between DIPLOMAT and WESTINGHOUSE was produced. WESTINGHOUSE was not in privity with FLORIDA POWER AND LIGHT COMPANY, WESLEY, DIPLOMAT or CONTINENTAL.

For brevity and clarity, the parties to this cause and certain documents therein will hereinafter be referred to as follows:

FLORIDA POWER AND LIGHT COMPANY as "FP & L" or "owner".

WESTINGHOUSE ELECTRIC SUPPLY COMPANY as "WESCO" or "plaintiff" or "materialman".

WESLEY CONSTRUCTION COMPANY as "WESLEY" or "general contractor".

AETNA CASUALTY AND INSURANCE COMPANY as "AETNA" or "surety for general contractor".

DIPLOMAT ELECTRIC, INC., as "DIPLOMAT" or "subcontractor".

CONTINENTAL CASUALTY COMPANY as "CONTINENTAL" or "surety for subcontractor".

The contract between WESLEY and FP & L, as "the general contract" or "prime contract".

The WESLEY-AETNA bond which was executed to FP & L as "the Aetna bond."

The contract between WESLEY and DIPLOMAT as "the subcontract".

The DIPLOMAT-CONTINENTAL bond which was executed to WESLEY as "the Continental bond."

### HISTORY OF THIS SUIT

In this cause WESCO sought recovery against DIPLOMAT for electrical materials and fixtures which were delivered to DIPLOMAT and used by DIPLOMAT as subcontractor in the construction of the FP & L building. WESCO also sought to recover from WESLEY, AETNA and CONTINENTAL upon the theory that WESCO is a third party beneficiary under both contracts and both bonds. A cross-claim was filed by WESLEY against CONTINENTAL seeking indemnity from CONTINENTAL for any liability which may be found in behalf of WESCO and against WESLEY.

Heretofore the Court entered a judgment in behalf of WESCO and against DIPLOMAT in the amount of $102,781.26; but dismissed the WESCO claims against WESLEY, AETNA and CONTINENTAL, as they pertain to the FP & L job. The WESCO judgment against DIPLOMAT was appealed and affirmed. Continental Casualty Co. v. Westinghouse Electric Supply Co., 403 F.2d 761 (5 Cir. 1968).

The dismissal of the claims against WESLEY, AETNA and CONTINENTAL was appealed and reversed on the ground that the contracts were not included in the appellate record, and hence it was impossible for the Appellate Court to review and determine whether WESCO was in fact a third party beneficiary under the contracts and bonds. Westinghouse Electric Supply Company v. Wesley

Construction Company, 414 F.2d 1280 (5 Cir. 1969).

Upon remand this Court reinstated the claims against WESLEY, AETNA and CONTINENTAL. WESLEY, AETNA and CONTINENTAL have denied plaintiff's third party beneficiary claim. There were other defenses which need not be specified at this time, except to mention the contention by CONTINENTAL that WESCO executed and delivered to DIPLOMAT a "Release of Lien", which was thereafter delivered by DIPLOMAT to CONTINENTAL and that said Release constitutes an estoppel against WESCO. Hence, the controlling issue in this controversy is whether WESCO has any action upon the contracts and bonds, as a third party beneficiary; and whether the execution and delivery of the release of lien by WESTINGHOUSE to DIPLOMAT, and by DIPLOMAT to CONTINENTAL, is a bar by estoppel of the WESCO claim against CONTINENTAL.

At the beginning of the instant trial counsel for WESCO announced that WESCO did not claim any right of recovery under the Mechanic's Lien Law or against FP & L, but restricted its claim for recovery upon the theory that WESCO was a third party beneficiary of the contracts and bonds in suit. The Court is compelled to express its amazement that WESCO did not protect itself by using the simple, easy to follow, and well understood procedures of the Florida Mechanic's Lien Law—Chapter 713 of the Florida Statutes. The obvious purpose of that law is to protect the interests of laborers and materialmen by giving a lien for work done and materials furnished in improving land and enhancing its value. Atkins v. Kendrick, 138 Fla. 776, 190 So. 248 (1939). All of this extensive and expensive litigation could have been thereby obviated.

## STIPULATION

The splendid lawyers who conducted the trial of this case substantially eased the Court's burden by stipulating certain facts, including the following:

1. No claim of lien against FP & L property was filed or recorded by WESCO.

2. No 90-day notice of performance and nonpayment, as required by the Florida Mechanic's Lien Law, was ever furnished by WESCO to WESLEY.

3. WESCO completed delivery of its electrical materials as of December 31, 1964.

4. No materials for the FP & L job were furnished directly to WESLEY by WESCO. No payments were made by WESLEY to DIPLOMAT after December 11, 1964, the date upon which WESCO executed and delivered said release of lien.

5. The law of Florida applies to the construction of the contract documents.

Counsel further assisted the Court in expediting the trial by stipulating that WESCO could offer in evidence its business records to establish the amounts and dates of its delivery of materials to DIPLOMAT, and the amounts billed to and unpaid by DIPLOMAT, without any contest as to the reasonableness of the charges or proof of delivery to the FP & L job site, or in any proof of the incorporation of the WESCO materials into the building.

In short, plaintiff was permitted to prove its claim for materials delivered to DIPLOMAT, for use in the FP & L building, by simply introducing in bulk the voluminous material which was used for that purpose in the prior trial. It was thereby quickly demonstrated, and the Court hereby finds and adjudges that WESCO furnished to DIPLOMAT electrical materials which were used in the FP & L job in the total amount of $102,681.26.

## THIRD PARTY BENEFICIARY CLAIM

WESCO insists that the contracts and the bonds contain provisions which, when

fairly construed, establish WESCO as a third party beneficiary thereunder. However, the Court finds and concludes that these documents were executed and delivered only for the benefit of the parties thereto, and that there was no intention on the part of the contracting parties to make WESCO a third party beneficiary thereof.

In reaching this conclusion, the Court has painstakingly waded through the contract and bond documents, and has especially inspected and considered each paragraph and subparagraph to which its attention has been directed. In performing this duty, the Court has placed itself as nearly as possible in the exact situation of the parties as of the time of the execution of the contracts and bonds in suit, and has sought to determine the intention of the contracting parties, the objects to be accomplished, the obligations which were created, and the other essential features.

It is utterly impossible, within the confines of a memorandum opinion such as this, to repeat and discuss all of the multiple provisions of each of these documents, and deal with them separately or collectively.

The Court must limit the following discussion to those provisions of each document which bear upon the Court's decision, just above announced.

## THIRD PARTY CLAIM UPON PRIME CONTRACT

■ The WESLEY-FP & L contract is upon a standard AIA long form which consists of more than 30 pages, together with the plans, shop drawings and other items. It is apparent from this contract that it simply spells out the relationship of the contracting parties and imposes upon and grants unto each of them certain obligations and benefits. No matter how much "nit-picking" is done throughout the prime contract documents the intention to make WESCO a third party beneficiary thereunder cannot be found. However, to avoid the impression that the Court has brushed this aspect light-

ly, the Court will now discuss Article 1 (c) and the first unnumbered paragraph of Article 9 and the first and third unnumbered paragraphs of Article 24 of the General Conditions of the prime contract which are stressed by WESCO and which read as follows:

*"ARTICLE 1*

c) The term Subcontractor, as employed herein, includes *only those having a direct contract with the Contractor* and it includes one who furnishes material worked to a special design according to the plans or specifications of this work, but does not include one who merely furnishes material not so worked. (italics supplied).

*ARTICLE 9*

Unless otherwise stipulated, the Contractor shall provide any pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work.

*ARTICLE 24*

At least ten days before each payment falls due, the Contractor shall submit to the Architect an itemized application for payment, supported to the extent required by the Architect by receipts or other vouchers, showing payments for materials and labor, payments to subcontractors and such other evidence of the Contractor's right to payment as the Architect may direct.

\* \* \* \* \* \*

If payments are made on account of materials not incorporated in the work but delivered and suitably stored at the site, or at some other location agreed upon in writing, such payments shall be conditioned upon submission by the Contractor of bills of sale or such other procedure as will establish the Owner's title to such material or otherwise adequately protect the Owner's interest including applicable insurance."

With respect to the General Condition in Article 1(c) WESCO contends that the lighting-ventilating fixtures, which constituted a substantial portion of WESCO's claim in this suit, were fabricated; and that because they were, plaintiff was not a materialman but a subcontractor, entitled to a third party beneficiary status, under the General Conditions at Article 1(c). However, the proof shows that the fixtures in question were purchased by WESCO as a middleman from COLUMBIA ELECTRIC COMPANY. There is no evidence that WESCO performed any special design, or that it performed any fabrication whatsoever, or that it did any work in connection with the installation of the fixtures. COLUMBIA, not WESCO, made a modification so that the fixtures would fit into the designed openings in the ceiling of the FP & L building.

Although there was some conflict in the testimony on the issue of whether these fixtures were stock items or fabricated items, the Court accepts as more credible and convincing the testimony which characterized the fixtures in question as standard catalog fixtures, which were then in current production. The Court finds and concludes that it was then standard practice to modify fixtures such as these, so that they would fit into a designed opening, and that the modification thereof by COLUMBIA did not constitute WESCO a subcontractor under the prime contract, especially where WESCO had no part in the design or manufacture of these items and did no work with respect to their installation. WESCO was simply a broker, which supplied these items through catalog presentation. Moreover, WESCO cannot qualify as a contractor because it did not have a direct contract connection with the general contractor which is required by Article 1(c) of the General Conditions. It is here relevant to note that after WESCO answered an interrogatory by saying that there was a "contract order" from DIPLOMAT to WESCO for the furnishing of these fixtures, WESCO could produce no such purchase order at the trial, though requested to do so. Nor did WESCO give any plausible explanation of its absence.

No useful purpose can be served by a detailed dissection of Articles 9 and 24, or any of the other General Conditions. A cursory inspection clearly indicates that the inclusion of these articles was for the exclusive purpose of protecting FP & L against claims of lien under the Mechanic's Lien Law. A construction that these provisions were included for the benefit of a materialman would be strained and unreasonable.

█ It is a cardinal rule in the construction of contracts that the intention of the parties thereto will be ascertained from a consideration of the entire agreement. It is not enough to look to an isolated phrase or paragraph of the contract. All portions of the contract are to be compared and construed with reference to each other. The intention of the parties with respect to any feature of the contract must be determined from an examination of the whole contract. 7 Fla. Jur. § 77, Page 142, and the many cases cited thereunder.

█ In order for one to qualify as a third party beneficiary under a contract, it must be shown that the intent and purpose of the contracting parties was to confer a direct and substantial benefit upon the third party. In the absence of a clear intent to benefit the third person, he cannot sue on the contract. Where the contract is designed solely for the benefit of the formal parties thereto, a third person cannot maintain an action thereon, even though such third person might derive some incidental or consequential benefit from its enforcement. American Surety Co. of New York v. Smith, 100 Fla. 1012, 130 So. 440 (1930).

### THIRD PARTY CLAIM UPON AETNA BOND

The WESLEY-AETNA bond which was executed to FP & L contains the following:

"Whereas the Principal has entered into a certain written contract with the

Owner * * * which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall fully indemnify the Owner from and against any failure on his part faithfully to perform the obligations imposed upon him under the terms of said contract free and clear of all liens arising out of claims for labor and material entering into the work, and if the said Principal shall pay all persons who shall have furnished labor or material *directly to the Principal for use in the prosecution of the aforesaid work,* each of which said persons shall have a direct right of action on this instrument in his own name and for his own benefit, subject, however, to the Owner's priority, then this obligation to be void, otherwise to remain in full force and effect." (italics supplied).

The condition of the AETNA bond makes it very clear that the only beneficiaries, thereunder, in addition to FP & L, are those who would furnish labor or material directly to the General Contractor for use in the prosecution of the aforesaid work (FP & L building), each of which said persons would have a direct right of action on the AETNA bond in his own name and for his own benefit, subject however, to the owner's priority. WESCO can't qualify thereunder.

■■ It has been heretofore stipulated that the general rules of suretyship in Florida are applicable to this cause. In Florida, the liability of the surety is ordinarily measured by the liability of the principal and cannot exceed it. The surety is not in general liable if the principal is not. (30 Fla.Jur., Suretyship and Guaranty, Section 10). It therefore follows that no third party beneficial interest for WESCO was *ipso facto* created simply by the execution and delivery of the AETNA bond, which by its terms excludes WESCO and other third parties.

■ During the trial and in the briefs, counsel engaged in debate on the issue of whether the AETNA and CONTINENTAL bonds are bonds which are covered by the provisions of Section 713.23 of the Florida Mechanic's Lien Law. This Court finds and concludes that neither bond is a Mechanic's Lien Law bond. The AETNA bond doesn't qualify because it does not comply with the mandatory provision of the Act which requires such bonds to be unrestricted as to the classes of persons who are protected thereby. As above shown, the AETNA bond restricts protection to FP & L *and to those who dealt directly with the general contractor.* But, even if the AETNA bond had complied with the mandatory requirements of the statute, WESCO would have no rights thereunder because WESCO has admitted that it did not, within 90 days after supplying materials, deliver to the general contractor a written notice of the delivery of such materials and the nonpayment thereof, which is also a statutory condition precedent to the institution or prosecution of any action upon any such bond. Fla.Statutes 713.23, F.S.A. Although it is out of sequence at this juncture to discuss the issue of whether the CONTINENTAL bond is one which qualifies under the Mechanic's Lien Law, it may be well to put that issue at rest now by finding and concluding, as the Court does, that the CONTINENTAL bond is not such a bond because DIPLOMAT was a "Subcontractor", and was not a "General Contractor". The Act specifically limits such bonds to general contractors, not subcontractors. Fla. Statutes 713.01 and 713.23.

### THIRD PARTY CLAIM ON SUBCONTRACT

The subcontract is also prolix. It incorporates by reference the instructions to bidders, the special notes, the specifications and drawings, and the prime contract and its General Conditions.

Since the subcontract incorporates by reference the prime contract, what the Court has heretofore said in connection

with the prime contract is germane here, but will not be here repeated.

 The Court finds that there is no particular provision of the subcontract which needs any special discussion, except the sixth paragraph thereof, which reads as follows:

"The Sub-Contractor agrees that he will receive any funds or advances under said Contract as a trust fund to be applied first to the payment of any amount owed to any person who has performed or furnished work or materials for the Sub-Contractor under this Contract before using the same for any other purpose".

When the foregoing paragraph is read and considered in context with all of the documents which it incorporates by reference, the conclusion is inescapable that the above paragraph is consistent with and is further indication of an intent on the part of the contracting parties to protect the owner and the general contractor against lien rights of third parties, who furnished no labor or material to and were not in privity with either.

The Court finds and concludes that neither the cited paragraph, nor any other portion of the subcontract, was included for the purpose of benefiting or protecting WESCO, or any other materialman. Even if the above paragraph could be construed to create a right in favor of a materialman, such right would necessarily be limited to an action against the subcontractor, not the general contractor.

Common sense and experience dictates that in the negotiation and execution of a subcontract such as we now have under discussion, it is expected by all parties that the materialmen will protect themselves by perfecting their liens under the Mechanic's Lien Law, which was enacted by the Legislature for their specific benefit.

### THIRD PARTY CLAIM ON THE CONTINENTAL BOND

[11, 12] By way of repetition, under the law of Florida, the obligation of a surety is measured by the contract of surety. The surety's obligation cannot be extended by implication or enlarged by construction beyond the terms of the suretyship agreement, in a way to include any subject or person other than expressed or necessarily implied from the suretyship contract. In other words, a surety in Florida is bound to the extent and in the manner indicated in the undertaking, and no further. The Courts of Florida will not presume that the contracting parties intended to include in their agreement a provision other than, or different from, those indicated by the language used. 30 Fla. Jur. 400, Paragraph 9 on Suretyship and Guaranty.

 Now, against this legal backdrop we shall examine the condition of the CONTINENTAL bond, which reads as follows:

"NOW THEREFORE, THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, that if the above bounden principal (Diplomat) shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by said principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above-named obligee (Wesley), all loss and damage which said obligee may sustain by reason of failure or default on the part of said principal (Diplomat), then this obligation shall be void; otherwise to be and remain in full force and effect". (The names provided in parenthesis have been supplied by the writer).

The Court finds and concludes that there is nothing in the condition of the CONTINENTAL bond to indicate any beneficial interest in WESCO. The issue of CONTINENTAL's liability to WESCO is controlled by the case of American Fire and Casualty Company v. Charles Sales Corp. of Orlando, 203 So.2d 670 (Fla.App. 4th Dist. 1967). In that case a materialman brought an action upon the bond which the subcontractor gave to

the general contractor, claiming that the subcontractor's bond protected the materialman for materials supplied to the subcontractor. The condition of that bond is strikingly similar to the CONTINENTAL bond, and reads as follows:

> "Now, Therefore, the condition of this obligation is such, that if the Principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and materials entering into the construction, and indemnify and save harmless the Obligee from all loss, cost or damage which he may suffer by reason of the failure so to do, then this obligation shall be void; otherwise to remain in full force and effect."

The materialman's claim was denied by the Florida Court, which held that the subcontractor's bond was only for the benefit of the general contractor and that the subcontractor's surety was not liable to a materialman for labor and materials furnished by him to the subcontractor.

In support of its third party beneficiary claim under the contracts and bonds in suit, WESCO relies heavily upon the case of Houston Fire & Casualty Insurance Company v. E. E. Cloer General Contractor, Inc., 217 F.2d 906 (5 Cir. 1954). This reliance is misplaced. In *Cloer* suit was brought under the MILLER ACT against a general contractor and his surety for the benefit of a materialman. The general contractor and his surety sought judgment over against the subcontractor's surety on a bond which was given by the subcontractor and its surety to the general contractor. The controlling issue in the cross-suit by *Cloer* was whether the subcontractor's bond was both a payment and a performance bond. Stated differently, the real issue in *Cloer* was not whether the materialman was a third party beneficiary, but rather the liability of the subcontractor's surety to the general contractor on a bond that had the general character-

istics of a performance bond and not a payment bond. *Cloer* simply held that the subcontractor's bond was both a payment and a performance bond. In the instant case, the subcontractor's bond was not a Miller Act bond, nor was it a bond given under what is commonly known in Florida as the LITTLE MILLER ACT.[1] Apparently, counsel for the plaintiff has misread and miscited *Cloer* to support plaintiff's third party beneficiary claim.

### RELEASE OF LIEN

On December 11, 1964, WESCO, acting by and through its authorized agent, executed under oath, in the presence of two subscribing witnesses, the following "Release of Lien".

> "For and in consideration of the payment of the sum of Ten Dollars ($10.-00) paid to or for us by the Diplomat Electric, Inc., receipt of which is hereby acknowledged, do hereby release and quit claim to the said Diplomat Electric, Inc., its successor or assigns, and Florida Power and Light Company, the owners, its successor or assigns, all our liens, lien rights, claims or demands of any kind whatsoever which we now have or might have against the building or premises situated at 4250 West Flagler Street, Miami, Florida, and legally described as Florida Power and Light Office Building, on account of labor performed and/or material furnished for the construction of any building thereon or in otherwise improving said property situated as above described."

This release was delivered by WESCO to DIPLOMAT. Subsequently it was delivered by DIPLOMAT to its surety, CONTINENTAL. It is permissible for a party, other than a laborer, to waive in writing a lien under the Florida Mechanic's Lien Law; and when a waiver is executed during construction, the waiver applies to materials furnished subsequent to the execution and delivery of the

---

1. Sec. 255.05 of the Florida Statutes, which simulates the Miller Act by substituting a bond on public projects in lieu of lien rights.

waiver. Jowein, Inc. v. Sudy Realty Corp., 73 So.2d 227 (Fla.1954).

During November of 1964 WESCO served its "Notice of Intention to Claim a Lien" by registered mail. In early January of 1965 FP & L sent a letter to WESLEY in connection with the lien rights of WESCO and others. Acting through its lawyer, WESLEY sent a demand letter to CONTINENTAL, as surety for DIPLOMAT. Soon thereafter a conference was conducted in the office of WESLEY's lawyer. That conference was attended by representatives of the parties, some of whom were more conspicuous and active than others. All the parties were then alerted of the possibility that a Claim of Lien would be filed by WESCO.

At the time of said conference, or immediately thereafter, CONTINENTAL demanded from DIPLOMAT a cash advancement to protect and indemnify CONTINENTAL from its exposure on the bond. At or about that time, CONTINENTAL learned that WESCO had executed and delivered to DIPLOMAT the above described Release of Lien. After an exchange of correspondence between counsel for CONTINENTAL and DIPLOMAT, the original Release of Lien was delivered by DIPLOMAT to CONTINENTAL, and simultaneously CONTINENTAL withdrew its demand for the advancement.

At the time of the delivery of the Release of Lien to CONTINENTAL there remained unpaid on the subcontract approximately $150,000; and CONTINENTAL then had available to it, in addition to the demand for the advancement, other means of legal self protection which were not exercised. The Court is convinced that CONTINENTAL did rely upon the Release of Lien, and relying thereon did forego certain legal rights that it then possessed, to its detriment—and that all of this resulted from WESCO having executed and delivered the Release of Lien in question to DIPLOMAT, which in turn was delivered by DIPLOMAT to CONTINENTAL.

In the prior trial, Continental Casualty Company v. Westinghouse Electric Supply Co., *supra*, this Court dealt with this same Release of Lien in adjudicating the claim of WESCO versus DIPLOMAT for these fixtures. In that connection, this Court held as follows:

"The Court finds and concludes that the document which DIPLOMAT relies upon as a release to it of legal obligation to pay for said materials does not in fact or in law release DIPLOMAT from said obligation, but rather has the limited effect of releasing the real property which constituted the Florida Power & Light job site of and from any claims of lien which WESCO may have claimed for the materials which it furnished. A careful inspection of the document discloses that its intention and purpose of releasing WESCO's lien on the real property was clear and unambiguous, and that it did not purport to release DIPLOMAT from paying for materials which it ordered and received from WESCO; and there was no evidence produced at the trial to the contrary. Indemnity Insurance Company of North America v. DuPont, Jr., 292 F.2d 569 (5 Cir. 1961); Atlantic Coast Line Railroad Co. v. Boone, 85 So.2d 834, 57 A.L.R.2d 1186 (Fla. 1956)."

There is no conflict between the treatment given this release there and the treatment which it has received here. There, the issue was whether DIPLOMAT could defeat the WESCO claim for the payment of the fixtures upon the basis of the release in question. Here the issue is whether CONTINENTAL could and did reasonably rely upon the Release of Lien, to its detriment. The Court finds and concludes that CONTINENTAL could and did so rely, and that WESCO is estopped to contend otherwise.

## CONCLUSION

Although there are other minor disputes as to fact and law, their resolu-

tion will not control, or even slightly affect, the final disposition of this controversy, for which reason they are pretermitted.

Because WESCO has failed to establish its claims against WESLEY, AETNA and CONTINENTAL, its complaint herein will be dismissed at the cost of and with prejudice to WESCO.

This memorandum opinion shall serve in lieu of separate Findings of Fact and Conclusions of Law, as required by Rule 52 of the Federal Rules of Civil Procedure. Counsel for WESLEY, AETNA and CONTINENTAL may jointly submit an appropriate Final Judgment in accordance with the foregoing, within fifteen (15) days after the entry of this opinion.