85 So.2d 834 (1956)
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, Appellant,
v.
Frona Mae BOONE and Helen Goff, Appellees.
Frona Mae BOONE and Helen Goff, Appellants,
v.
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, and H.J. Skinner, Appellees.
Supreme Court of Florida. Special Division B.
February 1, 1956.
Rehearing Denied February 29, 1956.
*836 Norman C. Shepard, Wilmington, N.C., Dewey A. Dye, Bradenton, LeRoy Allen and Ralph C. Dell, Tampa, for Atlantic Coast Line R. Co., appellant and appellees.
Mabry, Reaves, Carlton, Fields & Ward, Tampa, for Frona Mae Boone and Helen Goff, appellees and appellants.
THORNAL, Justice.
We have for consideration two separate appeals resulting from the verdict of a jury in favor of appellants Mrs. Boone and Mrs. Goff against the Atlantic Coast Line Railroad Company.
Appellants Boone and Goff appeal from an order of the trial judge granting a new trial pursuant to a motion filed by the Railroad.
By an entirely separate notice of appeal, the Railroad seeks reversal of an order of the trial judge refusing to enter a judgment for the Railroad pursuant to its motion for a directed verdict after the jury had rendered a verdict in favor of the plaintiffs and against the Railroad and after the trial judge had denied a similar motion for directed verdict at the conclusion of all of the evidence during the trial.
In the separate appeals no effort was made to cross-assign errors by the respective appellees.
The Goff case was previously before us on an appeal from an order of the trial judge granting a summary judgment for the defendant Railroad. This order was reversed on the ground that the facts shown by the motion and opposing affidavits revealed that questions of negligence and alleged contributory negligence were sufficiently in dispute that a jury decision on the problem was necessitated. See Goff v. Atlantic Coast Line R. Co., Fla. 1951, 53 So.2d 777. Many of the alleged facts now before us were mentioned in our earlier opinion.
The case arose out of a collision between a moving freight train of the Atlantic *837 Coast Line and an automobile operated by one Anthony J. Bartulevy. In addition to the driver of the car, the occupants thereof were John Boone, Helen Goff and Jewel Bullington. Boone and Mrs. Bullington were killed. Mrs. Goff was injured. Suits against the Railroad were instituted by Mrs. Goff, by Frona Mae Boone, widow of John Boone, and by V.L. Bullington, widower of Jewel Bullington. The suits were consolidated for trial and tried on the issues of negligence of the train crew, contributory negligence of the automobile passengers, negligence of Bartulevy, the automobile driver, and on the further question of the effect of certain documents executed with Bartulevy by Mrs. Goff, Mrs. Boone and Bullington, each styled "Covenant Not to Sue".
According to the testimony of members of the train crew, the bell on the engine was ringing, the whistle was blowing, and the train was traveling at a relatively moderate rate of speed across a wide-open crossing that permitted a clear view of the approaching train by the driver of the automobile on the intersecting highway. On the other hand, there is testimony for plaintiffs below that the train was traveling at a high rate of speed and that the signals of its approach were not given until the train was actually across the road. There was other testimony that an embankment and trees blocked the view of the approaching automobile driver and that he was exercising reasonable care and caution as he neared the crossing. There was evidence that the group in the automobile had spent the afternoon, from about noon until shortly after four o'clock when the collision occurred, visiting various and sundry beer taverns in the area. On the other hand, there was testimony that they had had very few beers and that the driver of the car was absolutely in control of his senses when he left the last tavern and proceeded on his tragic journey to the point of contact with the defendant's train. At the trial the judge deposited the problem of resolving all of these issues with the jury which, under our system, is the appropriate depository of the problem of arriving at factual conclusions to be determined from conflicting testimony.
In addition to these questions, the trial judge left with the jury the problem of determining whether the documents executed by Mrs. Goff and Mrs. Boone were releases or whether they were covenants not to sue. He also instructed the jury to determine whether the train crew and Bartulevy, the driver of the automobile, were joint tort-feasors. He advised them that if they found that the documents were releases and that Bartulevy was a joint tort-feasor with the Railroad, their joint negligence thereby causing the collision, then they would have to find for the Railroad for the reasons hereinafter mentioned. On the other hand, the jury was informed that if they determined the documents were covenants not to sue, such documents would not preclude a verdict against the Railroad even though they found that Bartulevy was a joint tort-feasor. As to Bullington, the court concluded as a matter of law that the document he signed was an outright release and in his case the jury was instructed that if they found that Bartulevy was a joint tort-feasor, they would have to find for the Railroad. However, Bullington asserted that the alleged release was obtained by misrepresentations and was therefore ineffective and the jury was further instructed by the judge that if they found from the evidence that the Bullington release was obtained by misrepresentations then it would not be a bar to his recovery against the Railroad but that any amount paid to him for the release should be deducted from the amount of any damages awarded to him against the Railroad.
At the conclusion of the testimony, the jury brought in a verdict in favor of Mrs. Goff and Mrs. Boone and against Bullington. Bullington has not appealed. As to Bullington, we have no way to determine from his record whether the jury decided against him on the theory that his wife was killed as the result of the negligence of joint tort-feasors (the Railroad and Bartulevy, the driver) and that the release of Bartulevy released the Railroad or whether they found for the Railroad on the proposition *838 that the complete release had been obtained by misrepresentations but that in actuality Bullington had already been paid in full and had recovered all of the damages to which he was entitled. We emphasize the foregoing with reference to the verdict against Bullington to underscore the fact that in our consideration of the appeal by Mrs. Boone and Mrs. Goff, we cannot be led to the inescapable conclusion that in the Bullington aspect of the trial the jury necessarily found that Bartulevy, the driver, and the Railroad were joint tort-feasors. The importance of this observation will be emphasized later in the opinion.
Following the verdict for Mrs. Boone and Mrs. Goff and within the time allowed by former Common Law Rule 40 (1954 Florida Rules of Civil Procedure 2.7) the Railroad filed a motion renewing the motion for a directed verdict which it had submitted at the conclusion of all the testimony and in the alternative moved for a new trial, grounding its position in both motions on the theory that the evidence showed that the Railroad was guiltless of negligence and that Bartulevy's negligence was the sole cause of the collision or in the alternative that the Railroad and Bartulevy were joint tort-feasors and that the documents executed by Mrs. Goff and Mrs. Boone were complete releases rather than covenants not to sue and that the Railroad was thereby released from further liability.
After considering the matter for over a year, the trial judge entered an order granting the Railroad's alternative motion for a new trial reciting as his reasons his conclusion that as a matter of law the documents in question were complete releases rather than covenants not to sue and that in his opinion "any liability of the defendant is that of a joint tort-feasor". In the same order by which he granted the new trial, the trial judge denied the Railroad's motion for a judgment regardless of the adverse verdict. From the order granting the new trial, Mrs. Goff and Mrs. Boone have perfected one appeal. The Railroad has undertaken to perfect an entirely separate appeal from the order denying the motion for judgment notwithstanding the adverse verdict.
Appellants Goff and Boone contend that the documents in question were merely covenants not to sue and should not bar their action against the Railroad even though the Railroad and Bartulevy were joint tort-feasors. They also contend that the negligence of the Railroad through the operation of its train was the sole proximate cause of the collision. By its appeal the Railroad contends that it was guiltless of negligence as a matter of law but that even if it was guilty of some negligence, Bartulevy, the driver of the automobile, was also negligent and that the injury and damage to the plaintiffs resulted from a joint tort and further that the documents were complete releases of a joint tort-feasor that relieved the other joint tort-feasor (the Railroad) of further liability to the plaintiffs below.
Before considering the merits of the contentions of the parties to the two appeals, we are compelled to examine the status of the record and the method by which these questions have been brought to the attention of this court. An appellate jurisdictional question is involved and such questions may be considered even though not raised by the parties.
In actions at law appeals lie only from final judgments except in certain limited situations defined by statute. See Sections 59.02-59.04, Florida Statutes, F.S.A. One of the exceptions is that "the party aggrieved" may appeal from the entry of an order granting a new trial. Section 59.04, Florida Statutes, F.S.A. The appeal perfected by the appellants Goff and Boone is therefore authorized by the statute cited, they being the "parties aggrieved" by the order. We find, however, no authority for an appeal based entirely on an order denying a motion for a directed verdict whether the motion is made during the course of the trial or after verdict following denial of a similar motion made during the course of the trial. In such situations, that is, where an order has been entered denying a motion for a directed *839 verdict under former Common Law Rule 40 (1954 Rules of Civil Procedure 2.7), the appeal must be from the final judgment itself rather than from the order denying the motion. The reason for the rule is that such orders are considered interlocutory and not final in nature and therefore insufficient to support the appeal, absent specific statutory authority therefor. There is no such authority. We have repeatedly announced that in the absence of specific authority established by statute an appeal from an interlocutory order in a law action will not be heard. In Leonetti v. Boone, Fla. 1954, 74 So.2d 551, we held, for example, that an order granting a new trial is reviewable on appeal therefrom only by virtue of statute that such review is limited to grounds specified by the trial judge as the basis for granting the order, again because of a statute; and further that on such an appeal the issue of whether the trial court committed error in refusing to direct a verdict for the plaintiff was not reviewable, the new trial having been granted on the defendant's motion.
Of more persuasive influence is our decision in Gore v. Hansen, Fla. 1952, 59 So.2d 538. In that case we held that former Common Law Rule 40 relating to motions for directed verdicts during and following trial does not define or in any way change the scope of the appellate jurisdiction of the Supreme Court and we concluded the case with the holding that an order denying a motion for entry of judgment pursuant to a motion for a directed verdict made and entered after a mistrial is not appealable under the statutes hereinabove cited. The reasoning of this court in Gore v. Hansen, supra, is appropriate to the situation before us in the case at bar.
Insofar as the question at issue is concerned, we find a precedent directly analogous in Ford Motor Co. v. Busam Motor Sales, 6 Cir., 185 F.2d 531. An examination of the opinion in the last cited case construing Federal Rules of Civil Procedure, Rule 50, 28 U.S.C.A., which is identical with our former Common Law Rule 40, will sustain the conclusion that an order denying a motion for a judgment notwithstanding the verdict is interlocutory and not appealable. Where the motion for the judgment notwithstanding the verdict is joined in the alternative with the motion for a new trial and the new trial is granted, then there is in existence no judgment from which an appeal could be perfected in order to raise the question of the correctness of the ruling on the motion for judgment notwithstanding the verdict.
On the effect of an order granting a new trial, we quote from 39 Am.Jur., New Trial, Sec. 204, p. 201, as follows:
"An order directing a new trial has the effect of vacating the proceeding and leaving the case as though no trial had been had. The verdict and judgment are set aside, even though the order does not specifically mention either. The granting of the motion usually has the effect, ipso facto, of vacating the judgment."
We are not to be understood as holding that an order denying a motion for directed verdict cannot be reviewed. Such orders are subject to review at the proper time, which is following the entry of the final judgment which ultimately disposes of the case and from which an appeal may properly be taken, but the appeal is from the final judgment not from the order denying the motion. If there is no final judgment, as where a new trial has been granted and the entire case is re-opened, there is no order from which an appeal can be taken to secure review of the denial of the directed verdict. In the absence of a final judgment to support the appeal, the order on the motion for a directed verdict in an of itself (unlike the order granting a new trial because of Section 59.04, Florida Statutes, F.S.A.) cannot constitute the basis for appeal.
A very helpful opinion covering the subject under discussion will be found in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. Also see *840 Barron and Holtzoff on Federal Practice and Procedure, Vol. 2, Sec. 1081; and Moore's Federal Practice, 2d Ed., Vol. 5, Sec. 50.14.
In order to avoid unduly lengthening this opinion we have refrained from quoting at length from the authorities cited. In applying this opinion as a precedent, however, they should be examined.
Applying the foregoing rules to the situation before us, we are, therefore, led to the conclusion that the appeal of Mrs. Goff and Mrs. Boone from the order granting the motion for new trial was properly perfected pursuant to provisions of Section 59.04, Florida Statutes, F.S.A., and that when the motion for new trial filed by the Railroad was granted, it had the effect of vacating any final judgment theretofore entered and completely revitalizing the entire cause for further proceedings in the form of a new trial. By granting the new trial the judge renewed and revived the judicial labor of the trial court. The order denying the motion for directed verdict being interlocutory in nature and there being no authority in this court to consider an appeal based entirely upon such an order, we find that we are without jurisdiction to consider the matters raised in the separate appeal perfected by the Railroad necessarily grounded entirely upon the adverse ruling on the motion for a directed verdict, there being no final judgment upon which such an appeal can be bottomed.
We return to the consideration of the merits of the appeal perfected by appellants Boone and Goff attacking the order of the trial judge granting the motion for new trial. We have examined the testimony, the exhibits and evidentiary facts revealed by the record and we cannot conclude that the record justifies the conclusion as a matter of law that either the train crew or Bartulevy, the driver of the automobile, was guilty of such negligence as to constitute the sole proximate cause of the injury and damage or that they were joint tort-feasors as a matter of law. Therefore, at the trial the judge properly submitted these problems to the jury for determination and a new trial on this ground should not have been granted on the basis of the facts presently appearing in the record, although at a subsequent trial of the cause, such a conclusion might appear justifiable from the facts then appearing.
The Railroad contends that when the jury found in its favor in the Bullington case which was consolidated with these cases for trial, it necessarily had to find either that the Railroad was guilty of no negligence or that the Railroad and Bartulevy were joint tort-feasors and the releases to Bartulevy would preclude recovery. We pointed out above that the jury could have based its verdict in the Bullington case on another factual situation, to-wit, that Bullington was entitled to recover from the Railroad but that the consideration paid to him for the previously executed release was adequate to satisfy his claim for damages and that therefore he was not entitled to any further recovery from the Railroad. Hence the existence of joint tort-feasorship was not necessarily concluded by the verdict against Bullington.
We now proceed to a consideration of the remaining question as to whether the documents executed by Mrs. Goff and Mrs. Boone were outright releases or merely covenants not to sue. The two documents were identical except as to name of covenantor and amount paid. In order to understand the problem, it is necessary to quote the entire document which we do (omitting signatures, witnesses and the acknowledgment) as follows:
"Covenant not to Sue
"I, Frona Mae Boone of Zolfo Springs in the County of Hardee and State of Florida for my heirs, executors and administrators, in consideration of the sum of Fifteen hundred and no/100  Dollars to me paid by Anthony J. Bartulevy the receipt of which is hereby acknowledged, do by this instrument covenant with said Anthony J. Bartulevy to forever refrain from instituting, *841 pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident which happened to my husband, John W. Boone on or about the 21 day of September 1949, at or near Oneco, Florida, whereby John W. Boone was fatally injured and for the above consideration I hereby agree to hold the said Anthony J. Bartulevy harmless from any damages to myself resulting or to result from said accident." (Emphasis ours.)
In arguing this cause at the bar of the Court, counsel for the respective parties have urged the Court to clarify what they allege to be certain questions arising out of previous decisions with reference to when a document will be considered a release and when it will be considered a covenant not to sue.
The basic rule on the effect of a release of one joint tort-feasor upon the liability of other joint tort-feasors was announced by this Court in Louisville & N.R. Co. v. Allen, 67 Fla. 257, 65 So. 8, 11, L.R.A. 1915C, 20, as follows:
"* * * The defendant does not question the general and well-established rule, which is thus laid down in 24 Amer. & Eng. Ency. of Law (2d Ed.) 306: `A release or discharge of one or more joint tort-feasors, executed in satisfaction of the tort, is a discharge of them all, on the ground that the party injured can have but one satisfaction for his injury. Each is considered as sanctioning all the acts of the others, thereby making them his own, and each is liable for the whole damage as if it had been occasioned by himself alone; hence the law considered that he who pays for the injury has paid for all, and there is nothing left for which the other tort-feasors can be liable.' As is further said on page 307 of the work cited: `Another reason for the rule, as stated by the courts, is that the release being taken most strongly against the releasor is conclusive evidence that he has been satisfied for the wrong; and after satisfaction, although it moved from only one of the tort-feasors, no foundation remains for an action against any one. A sufficient atonement having been made for the trespass, the whole matter is at an end. It is as though the wrong had never been done.'" (Emphasis ours.)
The case last cited is likewise authority for the proposition that even though the release contains a reservation of rights against the other tort-feasors, it will not thereby fail to have the effect stated in the last quotation. The position of this Court on such a reservation is stated as follows in Louisville & N.R. Co. v. Allen, supra:
"* * * We have reached the conclusion not only that the numerical weight of authority, but that the better-reasoned cases, are to the effect, as we [sic] held in Abb v. Northern Pacific Ry. Co., 28 Wash. 428, 68 P. 954, 58 L.R.A. 293, 92 Am.St.Rep. 864: `The acceptance of a sum of money from one joint tort-feasor in satisfaction of a claim for damages, and the execution of a release and discharge of such joint tort-feasor from all damages by reason of the injuries inflicted, operates as a release of the other joint tort-feasor, though the parties to the agreement may stipulate that the release of one shall not discharge the other.' We are impressed with the reasoning in this case. See the authorities cited therein." (Emphasis ours.)
The rule last stated continues to be the law in Florida and we have consistently adhered to it in later cases.
In City of Miami v. Miner, 124 Fla. 684, 169 So. 609, we recognized that a covenant not to sue as distinquished from an outright release of one tort-feasor would not have the effect of barring an action against the other joint tort-feasor. It *842 is contended by the appellants Goff and Boone that the document signed by them is very similar, if not identical, with the document in City of Miami v. Miner, supra. We have examined the document in the case last cited as it appears in the original record on file in this Court although it is not recited in the opinion. We detect a very substantial difference between the two and it is a difference which lays the foundation for the conclusion which we reach in the case at bar. In the document signed by the appellants Goff and Boone, it should be observed that they covenanted with Bartulevy "to forever refrain from instituting, pressing or in any way aiding any claim, demand, action or causes of action, for damages, cost, loss of service, expenses or compensation for, on account of, or in any way growing out of, or hereafter to grow out of an accident". (Emphasis ours.) The covenant before us was comprehensive and all-inclusive. It was not a covenant merely to refrain from suing Bartulevy. It was a covenant to refrain from suing everybody connected with the particular injury. In City of Miami v. Miner, supra, the covenant was to refrain from bringing any action against the Seaboard Airline Railroad Company. It named the specific joint tort-feasor whom the injured party was covenanting not to sue. This was not so in the document signed by Mrs. Goff and Mrs. Boone. True, they agreed to hold Bartulevy harmless but by language which is crystal-clear they also agreed for a consideration paid by Bartulevy to refrain from instituting any action whatsoever and they did not limit this agreement to refrain from suing only Bartulevy.
The same distinction should be noticed in the case of Martin v. Burney, 160 Fla. 183, 34 So.2d 36. An examination of our opinion in that case will show that it was clearly a covenant not to sue certain named alleged joint tort-feasors. It was not an all-inclusive agreement covering every claim arising out of the accident regardless of whom the alleged tort-feasor might be as was done in the agreement in the instant case.
The pole star that guides our course in arriving at a safe conclusion in the consideration of documents of this nature is the intent of the parties as expressed in the document itself. Where that intent can be determined from the language of the instrument, such intent will be conclusive in our determination of the nature of the instrument. The construction of the document then becomes a question of law and not a jury issue. See Roper v. Florida Public Utilities Co., 131 Fla. 709, 179 So. 904.
Because of certain language used in our opinion in Davidow v. Seyfarth, Fla. 1952, 58 So.2d 865, the parties in the instant case deem it of some consequence that the signers of the documents before us signed the same for themselves and for their "heirs, executors and administrators". Despite any language in previous opinions, we hold that the use of these or similar words are not determinative of whether a specific document is a release or a covenant not to sue. These words might appropriately be used in either document. Furthermore in some of the earlier decisions language has been used indicating that if the document shows that the injured party has received "satisfaction" for the alleged injury, it might be construed as a release instead of a covenant not to sue. In most tort cases and particularly in personal injury matters, it is impossible to determine when a particular individual feels that his claim has been satisfied in the sense of being adequately compensated. The word "satisfied" has been used in the opinions to indicate that the party's demand has been met and that he does not have any intention of pressing any further demand. It means satisfaction to the extent that he has been paid and will not pursue the matter further.
A good example of a covenant not to sue will be found in the case of Martin v. Burney, 160 Fla. 183, 34 So.2d 36. It will be noted there that the words "heirs, executors, administrators, successors and assigns" are used by the party who executed *843 the document. It will also be noted that the covenantor expressly reserved his rights against parties other than those specifically named in the covenant. Similar expressions if used in a release would not thereby convert it into a covenant not to sue. The key to the whole problem is that the injured party, if he desires merely to execute a covenant not to sue, should make the covenant with and for the benefit of the particular joint tort-feasor only.
A release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers. A covenant not to sue recognizes that the obligation or liability continues but the injured party agrees not to assert any rights grounded thereon against a particular covenantee.
In the case before us Mrs. Goff and Mrs. Boone made the agreement not with and for the particular joint tort-feasor alone but with him and for the benefit of everybody involved. They agreed not to sue anyone for the injury and damage.
We conclude with the holding that the appeal of the Railroad on the order denying the motion for a judgment notwithstanding the verdict is not properly before the court for consideration and, therefore, is dismissed ex mero motu.
On the appeal by Goff and Boone the order granting the motion for a new trial is affirmed, subject to our conclusions with reference to the findings of the trial judge on the matter of the alleged joint tort-feasorship of the Railroad and Bartulevy. The cases will have to be re-tried on the issues of negligence and damages in accordance with the rules announced by this opinion.
DREW, C.J., and THOMAS and ROBERTS, JJ., concur.