# Third District Court of Appeal

## State of Florida

Opinion filed March 10, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1614
Lower Tribunal Nos. 16-1435 & 16-1284

_____

**Celerina Nunez,**
Appellant,

vs.

**Universal Property & Casualty Insurance Company,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Giasi Law, P.A., and Melissa A. Giasi and Erin M. Berger (Tampa), for appellant.

Link & Rockenbach, PA, and Kara Rockenbach Link (West Palm Beach); Kelley Kronenberg, and Alison J. Trejo and Jeffrey M. Wank (Fort Lauderdale), for appellee.

Before EMAS, C.J., and SCALES and LOBREE, JJ.

EMAS, C.J.

Celerina Nunez (the insured below) appeals the trial court's order (1) granting the motion of Universal Property & Casualty Insurance Company (the insurer below) for directed verdict on whether Nunez materially breached the insurance contract by failing to attend an EUO, and (2) granting a new trial, pursuant to our decision in American Integrity Insurance Co. v. Estrada, 276 So. 3d 905 (Fla. 3d DCA 2019), to provide Nunez an opportunity to show that her "breach of [this] post-loss obligation did not prejudice" Universal. For the reasons that follow, we affirm the order granting a new trial pursuant to Estrada, but reverse the order directing a verdict on whether the insured materially breached the insurance contract.

**Factual and Procedural Background**

In April 2015, Nunez reported two water losses occurring days apart: one due to a leak in the kitchen, and a second due to a leak in the bathroom. The same day these claims were reported, Universal requested that Nunez provide a sworn proof of loss. Nunez provided the sworn proof of loss seventy-five days later (June 29), claiming $30,000 of damage to the kitchen and $20,000 of damage to the bathroom. In the interim, the property was

inspected (on May 7) and Nunez provided an unsworn, recorded statement by phone to Universal (on June 17).[1]

It is undisputed that, during the investigation of the claims, Universal requested Nunez to attend an Examination Under Oath (EUO), and that Nunez failed to appear. More specifically, Universal sent two letters (August 10 and 17, 2015) to Nunez's attorney requesting to set a date for the EUO. When counsel failed to respond, Universal sent a third letter (September 10) unilaterally scheduling the EUO for October 1. After Nunez failed to appear for her EUO, Universal denied both insurance claims based upon such failure and upon her failure to provide certain documentation. Nunez sued the insurer for breach of the insurance contract.[2]

Prior to trial, Universal moved for summary judgment on the basis that Nunez's failure to attend the EUO was a material breach of the insurance contract precluding recovery. The trial court denied the motion.

---

[1] These dates are included because Nunez maintained below and on appeal that (1) her failure to attend the Examination Under Oath (EUO) "was not willful"; (2) Universal was not prejudiced by such failure; and (3) it was unreasonable for Universal to demand an EUO because, in all other respects, she complied with Universal's investigation and Universal did not request the EUO until August (months after she reported her claims). However, and as Universal points out, while the claims were first reported in April, Universal did not receive a sworn proof of loss until the end of June.

[2] Two separate complaints were filed—one concerning the kitchen leak and one concerning the bathroom leak. The cases were consolidated for purposes of trial, and resulted in two separate verdicts in Nunez's favor.

At trial, Universal's primary defense was that, because Nunez had failed to sit for an EUO, she forfeited her rights to receive insurance benefits. Nunez, in response, generally argued that it was unreasonable for Universal to request an EUO 110 days after the claims were reported. Both at the close of the plaintiff's case and at the close of all the evidence, Universal raised the issue again, moving for a directed verdict on Nunez's failure to attend the EUO. The trial court denied these motions.

During a conference to discuss jury instructions and verdict forms, the parties disagreed on whether and how the jury should be instructed regarding Nunez's failure to attend the EUO. The trial court determined the jury would be instructed that if Nunez was able to meet her initial burden, i.e., that she "sustained covered losses during the policy period," "Universal must prove by the greater weight of the evidence that [Nunez] failed to comply with her obligations under the policy by not providing documentation and not appearing for her examination under oath." Consistent with this ruling, and over Universal's objection, the trial court determined the jury would be required to answer the following question in its verdict:

> Did ***Universal prove*** by the greater weight of the evidence that Plaintiff ***unreasonably failed to attend her Examination Under Oath*** on October 1, 2015?

(Emphasis added).

4

Consistent with the verdict form and jury instructions, the arguments during closing centered upon the reasonableness or unreasonableness of Nunez's failure to attend the EUO. Nunez argued that it was unreasonable for Universal to request an EUO 110 days after she reported her claims, and Universal argued that it *was* reasonable because Universal did not receive Nunez's sworn proof of loss until early July (75 days after she reported the claim and approximately thirty days before Universal sent out the first letter requesting an EUO). Nunez, on rebuttal, again urged that it was unreasonable for Universal to request the EUO 110 days after she reported the claim, provided a recorded statement, and Universal inspected the property.

The jury returned a verdict in Nunez's favor on both the kitchen claim ($15,000) and the bathroom claim ($20,000). Universal moved for a judgment notwithstanding the verdict based on Nunez's failure to attend her EUO. The trial court again rejected Universal's argument explaining that (given the totality of the circumstances) the jury did not find Nunez's failure to attend the EUO unreasonable.

Universal filed a renewed motion for directed verdict or, in the alternative, motion for new trial. Universal argued (among other things) that judgment should have been entered for Universal where it was undisputed

5

Nunez failed to appear for the EUO (i.e. an EUO "is a condition precedent to suit" and a failure to attend is "a material breach of the terms and conditions of the insurance contract"); and that the trial court erred "by elevating Universal's burden of proof" to establishing Nunez "unreasonably" failed to attend her EUO. In sum, Universal argued that the jury instructions and verdict forms were contrary to Florida law and that the verdict was against the manifest weight of the evidence. The day before the hearing on the renewed motion for directed verdict, this court released its opinion in Estrada, 276 So. 3d at 905.

A successor judge presided over the hearing on Universal's motion. The successor judge determined that the jury had not been properly instructed, and questioned whether there was "evidence of prejudice" to Universal (due to Nunez's failure to attend the EUO), and whether the fairer approach would be to grant a new trial "under the construct" of Estrada.

The trial court later entered a detailed order, granting in part Universal's motion for directed verdict and ordering a new trial. It found, among other things, that Nunez breached the contract when she failed to appear for the EUO, and "the court erred when it placed upon Universal a burden of establishing that this breach was 'unreasonable.'" In directing a verdict on the EUO issue and granting a new trial, the trial court reasoned:

6

Given that: (a) Universal's unpled EUO defense was obviously tried by consent[3], and (b) considerable precedent at the time of trial supported the position that a carrier could not avoid payment unless an insured's failure to attend an EUO caused prejudice, Plaintiff had an obligation to request a jury instruction on this issue, as well as an obligation to request that the jury be asked the question of whether Universal in fact was prejudiced by its failure to secure an EUO. Because it did neither, this avoidance was arguably waived, thereby entitling Universal to a directed verdict. On the other hand, the trial court—without hearing any substantive argument—did state on the record that 'there is no prejudice required," arguably making any attempt to request a jury instruction/interrogatory futile. On top of that, the EUO defense was never pled in the first place and— as a result— never had to be avoided in a formal pleading. Finally, neither party had the benefit of the Third District's [Estrada] decision which exhaustively surveyed the law on this point and definitely settled it in this district.

In light of these considerations, the trial court concluded "that the more appropriate remedy [was] to grant a new trial and direct a verdict in Universal's favor on the discrete issue of whether [Nunez] breached the contract by failing to attend an EUO." The court concluded that, at the new trial, the jury would be instructed accordingly. Nunez moved for reconsideration arguing primarily that the trial court exceeded its authority as

---

[3] While the affirmative defense pertaining to post-loss obligations was asserted in the bathroom leak cause of action, it was not asserted in the kitchen leak cause of action.

successor judge by reversing the exact same ruling made by the predecessor judge who presided over the trial, without any intervening change in circumstances to warrant such an action. The successor judge denied the motion, and this appeal followed.

**Standard of Review**

We apply a hybrid standard of review on appeal from an order granting a new trial:

> An order granting a new trial is generally reviewed for an abuse of discretion. An erroneous view of the law can constitute an abuse of discretion. Moreover, appellate courts apply a de novo standard of review to a trial court's legal conclusions in an order granting a new trial.

Kratz v. Daou, 299 So. 3d 442, 444 (Fla. 3d DCA 2019) (citations omitted). Nunez, on appeal, contends that the trial court "erroneously granted directed verdict in favor of [Universal] because there was evidence that [Nunez's] failure to sit for an EUO was not willful and there was no evidence that [Universal] was prejudiced," meaning a new trial on prejudice is unnecessary. This contention goes to whether the verdict was supported by the evidence and, therefore, the appropriate standard of review is abuse of discretion; to the extent the directed verdict and new trial were based on legal questions, however, we apply a de novo standard of review.

8

At the same time, because the ruling on the motion for directed verdict was made by a successor judge, it "is not entitled to the same deference on appeal as the ruling of a presiding judge."  Nat'l Healthcorp Ltd. P'ship v. Cascio, 725 So. 2d 1190, 1193 (Fla. 2d DCA 1998); Gemini Inv'rs III, L.P. v. Nunez, 78 So. 3d 94, 97 (Fla. 3d DCA 2012) (holding that "while a successor judge has the authority to correct any errors in prior interlocutory rulings on matters of law, a successor judge should give credence to a predecessor's rulings on issues of law. Generally, the rotation of judges from one division to another should not be an opportunity to revisit the predecessor's rulings.") (citations omitted); Gen. Hosp. of Greater Miami, Inc. v. Gager, 160 So. 2d 749, 751 (Fla. 3d DCA 1964) (noting: "[T]he granting of a new trial . . . does not come to the appellate court clothed with the same weight as such an order entered by the judge who tried the case. This is true because we may not say that the trial judge had the great advantage of observing the witnesses and the conduct of the trial") (citing Wolkowsky v. Goodkind, 153 Fla. 267 (Fla. 1943)).

**Discussion**

Although the successor judge correctly granted the motion for new trial, he erred in directing a verdict[4] on the question of whether Nunez materially breached the contract where the jury was never instructed on the issue. We therefore remand for a new trial on whether Nunez materially breached the insurance policy by failing to attend the EUO and, if necessary, on whether such breach prejudiced Universal. This result is controlled by our decision in Estrada which addressed, as an issue of first impression in this District, "whether, after a finding has been made that an insured materially breached a post-loss policy provision, a further finding must also be made that the insured's non-compliance caused prejudice to the insurer." Estrada, 276 So. 3d at 914-15. In that case, Maria Estrada filed an insurance

---

[4] The predecessor judge's order denying Universal's motion for directed verdict was an interlocutory order of which the successor judge had the "authority" and "obligation" to consider and to correct if it was premised on an incorrect interpretation of the law. Otis Elevator Co. v. Gerstein, 612 So. 2d 659, 659-60 (Fla. 3d DCA 1993) (holding: "[A] successor judge has the authority to rule upon a motion for a new trial in a jury case."); Raymond, James & Assocs., Inc. v. Zumstorchen Inv., Ltd., 488 So. 2d 843, 845 (Fla. 2d DCA 1986) (holding: "[A] successor judge has the obligation to correct any error in a prior interlocutory ruling on matters of law."). See also Atl. Coast Line R. Co. v. Boone, 85 So. 2d 834, 840 (Fla. 1956) (recognizing that an order denying a motion for directed verdict is "interlocutory in nature"). See also Fla. R. Civ. P. 1.480(c) (providing: "A motion for a new trial may be joined with [a motion for directed verdict] or a new trial may be requested in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.")

claim due to a home burglary, and the insurer, American Integrity, commenced an investigation and requested Estrada to comply with several post-loss obligations. The claim, however, was denied after Estrada allegedly failed to submit to an EUO and provide a sworn proof of loss. Id. at 907. Estrada filed a breach of contract action upon her claim being denied.

A primary issue at trial was the extent of Estrada's compliance with her post-loss obligations prior to filing her lawsuit. In proving their cases, each party presented evidence on whether or not Estrada "substantially complied with her post-loss obligations." Id. at 909. At the close of the evidence, Estrada moved for a directed verdict on various affirmative defenses, including American Integrity's defense related to post-loss obligations, arguing that "in order for there to be a valid coverage defense with respect to an insured's post-loss obligations in a homeowner's insurance policy, . . . the insurer must plead and prove it was prejudiced by the insured's non-compliance." Id. Agreeing with Estrada, the trial court directed a verdict on the insurer's affirmative defenses pertaining to failure to comply with post-loss obligations. Because all of American Integrity's coverage defenses were stricken, the only issue left for the jury to consider was the amount of damages to award Estrada. Id. After the jury awarded damages for Estrada, final judgment was entered, and the insurer appealed.

11

On appeal, we reversed the trial court's order directing a verdict in favor of Estrada, and addressed each party's burden as it relates to post-loss obligations:

> [F]or an insurer to successfully establish a coverage defense based upon an insured's failure to satisfy post-loss obligations such that an insured forfeits coverage under a policy, *the insurer must plead and prove that the insured has materially breached a post-loss policy provision*. If the insurer establishes such a material breach by the insured, *the burden then shifts to the insured to prove that any breach did not prejudice the insurer*.

Id. at 912 (emphasis added).  We further explained:

> [F]or there to be a total forfeiture of coverage under a homeowner's insurance policy for failure to comply with post-loss obligations (i.e., conditions precedent to suit), *the insured's breach must be material*. See Drummond, 970 So. 2d at 460 (concluding that the insured's failure to comply with a post-loss obligation "was a material breach of a condition precedent to [the insurer's] duty to provide coverage under the policy") (emphasis added); Starling, 956 So. 2d at 513 ("[A] material breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract.") (emphasis added); Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 303 (Fla. 4th DCA 1995) ("An insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy.") (emphasis added); Stringer v. Fireman's Fund Ins. Co., 622 So. 2d 145, 146 (Fla. 3d DCA 1993) ("[T]he failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of

12

its liability to pay." (quoting 13A Couch on Insurance 2d (Rev. 3d) § 49A:361 at 760 (1982) (footnote omitted) (emphasis added))).

Further, while the interpretation of the terms of an insurance contract normally presents an issue of law, *the question of whether certain actions constitute compliance with the contract often presents an issue of fact*. See State Farm Fla. Ins. Co. v. Figueroa, 218 So. 3d 886, 888 (Fla. 4th DCA 2017) ("Whether an insured substantially complied with policy obligations is a question of fact.") (emphasis added); Solano v. State Farm Fla. Ins. Co., 155 So. 3d 367, 371 (Fla. 4th DCA 2014) ("A question of fact remains as to whether there was sufficient compliance with the cooperation provisions of the policy to provide State Farm with adequate information to settle the loss claims or go to an appraisal, thus precluding a forfeiture of benefits owed to the insureds.")

Id. at 914 (emphasis added).

Importantly, and given that the parties and the trial court in Estrada did not have the benefit of our pronouncement on this issue of first impression prior to the trial in that case, our reversal was accompanied by an instruction that the trial court on remand grant American Integrity leave to amend "affirmative defenses alleging Estrada failed to materially satisfy any contracted-for post-loss obligations," id. at 917, and to grant Estrada leave to file appropriate replies. We further held that, if the insurer thereafter established a material breach, the burden would then shift to Estrada to establish the insurer was not prejudiced by the breach. Id.

13

The analysis and holding of <u>Estrada</u> are fully applicable here, and lead us to the same result. In the instant case, the jury verdict asked: "Did Universal prove by the greater weight of the evidence that plaintiff unreasonably failed to attend her Examination Under Oath?"[5] The jury was also instructed that, if Nunez proved by the greater weight of the evidence that she sustained covered losses during the covered period, the burden was on Universal, who "must prove by the greater weight of the evidence that the plaintiff failed to comply with her obligations under the policy" by not appearing for her EUO. Nowhere in the verdict form or the jury instructions was the jury instructed to consider whether, in light of the evidence presented, Universal established that Nunez materially breached the contract by failing to appear for her EUO. Nor was there any corollary instruction or provision in the verdict form for the jury to consider (assuming proof of a material breach) whether Nunez established that Universal was not prejudiced by the breach.

---

[5] During oral argument, counsel for Nunez explained that the "reasonableness" language was meant to track the insurance policy. But this interpretation—that the EUO request must be reasonable—is not consistent with the policy's plain meaning: "In case of a loss to covered property, you must see that the following are done: . . . **As often as we reasonably require**: . . . Submit to examination under oath, while not in the presence of any other 'insured,' and sign the same."

14

Consistent with our holding in <u>Estrada</u>, we affirm the trial court's order granting a new trial, but reverse the trial court's order directing a verdict in favor of Universal on the materiality of the breach. Further, and consistent with our remand instructions in <u>Estrada</u> (and in light of the fact that the parties in this case likewise did not have the benefit of our holding in <u>Estrada</u> at the time of trial)[6] we remand the cause for a new trial at which the factfinder can consider and determine whether Universal proved Nunez's failure to attend the EUO was a material breach of the contract and, if so, whether Nunez then proved that this material breach did not prejudice Universal. The parties should be granted leave to amend the pleadings as appropriate and necessary in light of this opinion and <u>Estrada</u>.

**Conclusion**

We affirm the trial court's order granting a new trial, but reverse the trial court's order directing a verdict, and remand for a new trial and for further proceedings consistent with this opinion.

---

[6] In our recent decision in <u>Universal Property & Casualty Ins. Co. v. Horne</u>, __ So. 3d __, 46 Fla. L. Weekly D201 (Fla. 3d DCA Jan. 20, 2021), an unrelated appeal involving a strikingly similar procedural posture and legal issue, we noted: "The opinion in <u>Estrada</u> was released six weeks after the jury rendered its verdict below. Thus, neither the parties nor the trial court had the benefit thereof at the time of trial." <u>Id.</u> at *4 n.7. We reversed and remanded "for the parties to present their cases under the framework established in <u>Estrada</u>." <u>Id.</u> at *4.

15