# Third District Court of Appeal

## State of Florida

Opinion filed August 4, 2021.
This Opinion is not final until disposition of any further motion for rehearing
and/or motion for rehearing en banc. Any previously filed motion for
rehearing en banc is deemed moot.

_____

No. 3D19-1614
Lower Tribunal Nos. 16-1435 & 16-1284

_____

**Celerina Nunez,**
Appellant,

vs.

**Universal Property & Casualty Insurance Company,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Giasi Law, P.A., and Melissa A. Giasi and Erin M. Berger (Tampa), for appellant.

Link & Rockenbach, PA, and Kara Rockenbach Link and Daniel M. Schwarz (West Palm Beach); Kelley Kronenberg, and Alison J. Trejo and Jeffrey M. Wank (Fort Lauderdale), for appellee.

Before EMAS, SCALES and LOBREE, JJ.

EMAS, J.

## ON MOTION FOR REHEARING

We deny appellee's motion for rehearing, withdraw our previous opinion, and substitute the following in its stead:

Celerina Nunez (the insured below) appeals the trial court's order (1) granting the motion of Universal Property & Casualty Insurance Company (the insurer below) for directed verdict on whether Nunez materially breached the insurance contract by failing to attend an EUO, and (2) granting a new trial, pursuant to our decision in American Integrity Insurance, Co. v. Estrada, 276 So. 3d 905 (Fla. 3d DCA 2019), to provide Nunez an opportunity to show that her "breach of [this] post-loss obligation did not prejudice" Universal. For the reasons that follow, we affirm as to both issues.

### Factual and Procedural Background

In April 2015, Nunez reported two water losses occurring days apart: one due to a leak in the kitchen, and a second due to a leak in the bathroom. The same day these claims were reported, Universal requested that Nunez provide a sworn proof of loss. Nunez provided the sworn proof of loss 75 days later (June 29), claiming $30,000 of damage to the kitchen and $20,000 of damage to the bathroom. In the interim, the property was inspected (on

May 7) and Nunez provided an unsworn, recorded statement by phone to Universal (on June 17).[1]

It is undisputed that, during the investigation of the claims, Universal requested Nunez to attend an Examination Under Oath (EUO), and that Nunez failed to appear. More specifically, Universal sent two letters (August 10 and 17, 2015) to both Nunez and her attorney requesting to set a date for the EUO. When counsel failed to respond, Universal sent a third letter (September 10) unilaterally scheduling the EUO for October 1. After Nunez failed to appear for her EUO, Universal denied both insurance claims based upon such failure and upon her failure to provide certain documentation. Nunez sued the insurer for breach of the insurance contract.[2]

Prior to trial, Universal moved for summary judgment on the basis that Nunez's failure to attend the EUO was a material breach of the insurance contract precluding recovery. The trial court denied the motion.

---

[1] These dates are included because Nunez maintains that (1) her failure to attend the Examination Under Oath (EUO) "was not willful"; (2) Universal was not prejudiced by such failure; and (3) it was unreasonable for Universal to demand an EUO because, in all other respects, she complied with Universal's investigation and Universal did not request the EUO until August (months after she reported her claims). However, and as Universal points out, while the claims were first reported in April, Universal did not receive a sworn proof of loss until the end of June.

[2] Two separate complaints were filed—one concerning the kitchen leak and one concerning the bathroom leak. The cases were consolidated for purposes of trial, and resulted in two separate verdicts in Nunez's favor.

3

At trial, Universal's primary defense was that, because Nunez had failed to sit for an EUO, she forfeited her rights to receive insurance benefits. Nunez, in response, generally argued that it was unreasonable for Universal to request an EUO 110 days after the claims were reported. Both at the close of the plaintiff's case and at the close of all the evidence, Universal raised the issue again, moving for a directed verdict on Nunez's failure to attend the EUO. The trial court denied these motions.

During a conference to discuss jury instructions and verdict forms, the parties disagreed on whether and how the jury should be instructed regarding Nunez's failure to attend the EUO. The trial court determined the jury would be instructed that if Nunez was able to meet her initial burden, i.e., that she "sustained covered losses during the policy period," "Universal must prove by the greater weight of the evidence that [Nunez] failed to comply with her obligations under the policy by not providing documentation and not appearing for her examination under oath." Consistent with this ruling, and over Universal's objection, the trial court determined the jury would be required to answer the following question in its verdict:

> Did ***Universal prove*** by the greater weight of the evidence that Plaintiff ***unreasonably failed to attend her Examination Under Oath*** on October 1, 2015?

4

(Emphasis added).[3]

Consistent with the verdict form and jury instructions, the arguments during closing centered upon the reasonableness or unreasonableness of Nunez's failure to attend the EUO. Nunez argued that it was unreasonable for Universal to request an EUO 110 days after she reported her claims, and Universal argued that it *was* reasonable because Universal did not receive Nunez's sworn proof of loss until early July (75 days after she reported the claim and approximately thirty days before Universal sent out the first letter requesting an EUO). Nunez, on rebuttal, again urged that it was unreasonable for Universal to request the EUO 110 days after she reported the claim, provided a recorded statement, and Universal inspected the property.

The jury returned a verdict in Nunez's favor on both the kitchen claim ($15,000) and the bathroom claim ($20,000). Universal moved for a judgment notwithstanding the verdict based on Nunez's failure to attend her EUO. The trial court again rejected Universal's argument explaining that

---

[3] During oral argument, counsel for Nunez explained that the "reasonableness" language was meant to track the insurance policy. But this interpretation—that the EUO request must be reasonable—is not consistent with the policy's plain meaning: "In case of a loss to covered property, you must see that the following are done: . . . **As often as we reasonably require**: . . . Submit to examination under oath, while not in the presence of any other 'insured,' and sign the same."

5

(given the totality of the circumstances) the jury did not find Nunez's failure to attend the EUO unreasonable.

Universal filed a renewed motion for directed verdict or, in the alternative, motion for new trial. Universal argued (among other things) that judgment should have been entered for Universal where it was undisputed Nunez failed to appear for the EUO; and that the trial court erred "by elevating Universal's burden of proof" to establishing Nunez "unreasonably" failed to attend her EUO. In sum, Universal argued that the jury instructions and verdict forms were contrary to Florida law and that the verdict was against the manifest weight of the evidence. The day before the hearing on the renewed motion for directed verdict, this court released its opinion in American Integrity Insurance Company v. Estrada, 276 So. 3d 905 (Fla. 3d DCA 2019).

A successor judge presided over the hearing on Universal's motion. The successor judge determined that the jury had not been properly instructed, and questioned whether there was "evidence of prejudice" to Universal (due to Nunez's failure to attend the EUO), and whether the fairer approach would be to grant a new trial "under the construct" of Estrada.

The trial court later entered a detailed order, granting in part Universal's motion for directed verdict and ordering a new trial. It found,

6

among other things, that Nunez breached the contract when she failed to appear for the EUO, and "the court erred when it placed upon Universal a burden of establishing that this breach was 'unreasonable.'" In directing a verdict on the EUO issue and granting a new trial, the trial court reasoned:

> Given that: (a) Universal's unpled EUO defense was obviously tried by consent[4], and (b) considerable precedent at the time of trial supported the position that a carrier could not avoid payment unless an insured's failure to attend an EUO caused prejudice, Plaintiff had an obligation to request a jury instruction on this issue, as well as an obligation to request that the jury be asked the question of whether Universal in fact was prejudiced by its failure to secure an EUO. Because it did neither, this avoidance was arguably waived, thereby entitling Universal to a directed verdict. On the other hand, the trial court—without hearing any substantive argument—did state on the record that 'there is no prejudice required," arguably making any attempt to request a jury instruction/interrogatory futile. On top of that, the EUO defense was never pled in the first place and—as a result— never had to be avoided in a formal pleading. Finally, neither party had the benefit of the Third District's [Estrada] decision which exhaustively surveyed the law on this point and definitely settled it in this district.

In light of these considerations, the trial court concluded "that the more appropriate remedy [was] to grant a new trial and direct a verdict in

---

[4] While the affirmative defense pertaining to post-loss obligations was asserted in the bathroom leak cause of action, it was not asserted in the kitchen leak cause of action.

7

Universal's favor on the discrete issue of whether [Nunez] breached the contract by failing to attend an EUO." The court concluded that, at the new trial, the jury would be instructed accordingly. Nunez moved for reconsideration arguing primarily that the trial court exceeded its authority as successor judge by reversing the exact same ruling made by the predecessor judge who presided over the trial, without any intervening change in circumstances to warrant such an action. The successor judge denied the motion, and this appeal followed.

**Standard of Review**

We apply a hybrid standard of review on appeal from an order granting a new trial:

> An order granting a new trial is generally reviewed for an abuse of discretion. An erroneous view of the law can constitute an abuse of discretion. Moreover, appellate courts apply a de novo standard of review to a trial court's legal conclusions in an order granting a new trial.

Kratz v. Daou, 299 So. 3d 442, 444 (Fla. 3d DCA 2019) (citations omitted). Nunez, on appeal, contends that the trial court "erroneously granted directed verdict in favor of [Universal] because there was evidence that [Nunez's] failure to sit for an EUO was not willful and there was no evidence that [Universal] was prejudiced," meaning a new trial on prejudice is unnecessary. This contention goes to whether the verdict was supported by

8

the evidence and, therefore, the appropriate standard of review is abuse of discretion; to the extent the directed verdict and new trial were based on legal questions, however, we apply a de novo standard of review.

At the same time, because the ruling on the motion for directed verdict was made by a successor judge, it "is not entitled to the same deference on appeal as the ruling of a presiding judge." Nat'l Healthcorp Ltd. P'ship v. Cascio, 725 So. 2d 1190, 1193 (Fla. 2d DCA 1998); Gemini Inv'rs III, L.P. v. Nunez, 78 So. 3d 94, 97 (Fla. 3d DCA 2012) ("[W]hile a successor judge has the authority to correct any errors in prior interlocutory rulings on matters of law, a successor judge should give credence to a predecessor's rulings on issues of law. Generally, the rotation of judges from one division to another should not be an opportunity to revisit the predecessor's rulings.") (citations omitted); Gen. Hosp. of Greater Miami, Inc. v. Gager, 160 So. 2d 749, 751 (Fla. 3d DCA 1964) ("[T]he granting of a new trial . . . does not come to the appellate court clothed with the same weight as such an order entered by the judge who tried the case. This is true because we may not say that the trial judge had the great advantage of observing the witnesses and the conduct of the trial.") (citing Wolkowsky v. Goodkind, 153 Fla. 267 (Fla. 1943)).

**Discussion**

9

The successor judge correctly directed a verdict on the question of whether Nunez materially breached the contract and, further, correctly granted the motion for new trial on whether such breach prejudiced Universal.[5] This result is controlled by our decision in Estrada which addressed, as an issue of first impression in this District, "whether, after a finding has been made that an insured materially breached a post-loss policy provision, a further finding must also be made that the insured's non-compliance caused prejudice to the insurer." Estrada, 276 So. 3d at 914-15. In that case, Maria Estrada filed an insurance claim due to a home burglary, and the insurer, American Integrity, commenced an investigation and requested Estrada to comply with several post-loss obligations. The claim,

---

[5] The predecessor judge's order denying Universal's motion for directed verdict was an interlocutory order of which the successor judge had the "authority" and "obligation" to consider and to correct if it was premised on an incorrect interpretation of the law. Otis Elevator Co. v. Gerstein, 612 So. 2d 659, 659-60 (Fla. 3d DCA 1993) ("[A] successor judge has the authority to rule upon a motion for a new trial in a jury case."); Raymond, James & Assocs., Inc. v. Zumstorchen Inv., Ltd., 488 So. 2d 843, 845 (Fla. 2d DCA 1986) ("[A] successor judge has the obligation to correct any error in a prior interlocutory ruling on matters of law.") See also Atl. Coast Line R. Co. v. Boone, 85 So. 2d 834, 840 (Fla. 1956) (recognizing that an order denying a motion for directed verdict is "interlocutory in nature"). See also Fla. R. Civ. P. 1.480(c) ("A motion for a new trial may be joined with [a motion for directed verdict] or a new trial may be requested in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.")

10

however, was denied after Estrada allegedly failed to submit to an EUO and provide a sworn proof of loss. Id. at 907. Estrada filed a breach of contract action upon her claim being denied.

A primary issue at trial was the extent of Estrada's compliance with her post-loss obligations prior to filing her lawsuit. In proving their case, each party presented evidence on whether or not Estrada "substantially complied with her post-loss obligations." Id. at 909. At the close of the evidence, Estrada moved for a directed verdict on various affirmative defenses, including American Integrity's defense related to post-loss obligations, arguing that "in order for there to be a valid coverage defense with respect to an insured's post-loss obligations in a homeowner's insurance policy, . . . the insurer must plead and prove it was prejudiced by the insured's non-compliance." Id. Agreeing with Estrada, the trial court directed a verdict on the insurer's affirmative defenses pertaining to failure to comply with post-loss obligations. Because all of American Integrity's coverage defenses were stricken, the only issue left for the jury to consider was the amount of damages to award Estrada. Id. After the jury awarded damages for Estrada, final judgment was entered, and the insurer appealed.

On appeal, we reversed the trial court's order directing a verdict in favor of Estrada, and addressed each party's burden as it relates to post-loss obligations:

> [F]or an insurer to successfully establish a coverage defense based upon an insured's failure to satisfy post-loss obligations such that an insured forfeits coverage under a policy, *the insurer must plead and prove that the insured has materially breached a post-loss policy provision*. If the insurer establishes such a material breach by the insured, *the burden then shifts to the insured to prove that any breach did not prejudice the insurer*.

Id. at 912 (emphasis added). We further explained:

> [F]or there to be a total forfeiture of coverage under a homeowner's insurance policy for failure to comply with post-loss obligations (i.e., conditions precedent to suit), *the insured's breach must be material*. See Drummond, 970 So. 2d at 460 (concluding that the insured's failure to comply with a post-loss obligation "was a material breach of a condition precedent to [the insurer's] duty to provide coverage under the policy") (emphasis added); Starling, 956 So. 2d at 513 ("[A] material breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract.") (emphasis added); Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 303 (Fla. 4th DCA 1995) ("An insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy.") (emphasis added); Stringer v. Fireman's Fund Ins. Co., 622 So. 2d 145, 146 (Fla. 3d DCA 1993) ("[T]he failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of

12

its liability to pay." (quoting 13A Couch on Insurance 2d (Rev. 3d) § 49A:361 at 760 (1982) (footnote omitted) (emphasis added))).

Further, while the interpretation of the terms of an insurance contract normally presents an issue of law, *the question of whether certain actions constitute compliance with the contract often presents an issue of fact*. See State Farm Fla. Ins. Co. v. Figueroa, 218 So. 3d 886, 888 (Fla. 4th DCA 2017) ("Whether an insured substantially complied with policy obligations is a question of fact.") (emphasis added); Solano v. State Farm Fla. Ins. Co., 155 So. 3d 367, 371 (Fla. 4th DCA 2014) ("A question of fact remains as to whether there was sufficient compliance with the cooperation provisions of the policy to provide State Farm with adequate information to settle the loss claims or go to an appraisal, thus precluding a forfeiture of benefits owed to the insureds.")

Id. at 914 (emphasis added).

As we reiterated in Estrada, the "question of whether certain actions constitute compliance with the contract often presents an issue of fact." Id. However, there is no such question here, as it is undisputed that Nunez failed to attend the EUO and no evidence was presented that Nunez attempted to comply with this condition precedent to suit. See Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 303 (Fla. 4th DCA 1995) (holding that "insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy"); Shivdasani v. Universal Prop. &

13

<u>Cas. Ins. Co.</u>, 306 So. 3d 1156, 1160 (Fla. 3d DCA 2020) ("It is unquestionable that in order for there to be substantial compliance, there must be evidence of some compliance."); <u>Edwards v. Safepoint Ins. Co.</u>, 318 So. 3d 13, 17 (Fla. 4th DCA 2021) (finding "total failure" to comply with the proof-of-loss requirement, and explaining there was no evidence of substantial compliance and "[t]he insured never offered any legitimate explanation for her noncompliance").

The policy expressly required Nunez to submit to an examination under oath as part of her "Duties After Loss":

> **2. Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
>
> ***
> f. As often as we reasonably require:
>
> (1) Show the damaged property;
> (2) Provide use with records and documents we request and permit us to make copies; and
> (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

The policy further provided:

> **8. Suit Against Us.**  No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

Universal sent two letters (each letter sent to both Nunez and her counsel) requesting to set an EUO "for a mutually convenient date and time,"

14

and advising that "any failure to schedule and submit to the Examination Under Oath may be considered as a violation of the conditions of the subject Policy and prejudice [the] investigation of [the] claim." Upon receiving no response from Nunez or her counsel, Universal sent a third letter to Nunez and her counsel unilaterally setting the EUO for a month later in Aventura, and again advising that "failure to appear may be regarded as a breach of the terms and provisions of [the] Policy." No evidence was presented at trial that Nunez responded to the letters, attempted to reschedule the EUO, or otherwise complied in any manner with the request for an EUO. Compare with Abdo v. Avatar Prop. & Cas. Ins. Co., 302 So. 3d 926 (Fla. 4th DCA 2020) (finding the record did not demonstrate a "total failure" to comply with the EUO policy requirement where the insured provided a "reasonable explanation for his nonattendance at the EUO, and his attorney attempted to reschedule the EUO on two occasions") and Himmel v. Avatar Prop. & Cas. Ins. Co., 257 So. 3d 488, 492 (Fla. 4th DCA 2018) (finding the record did not demonstrate a "total failure" to comply with the EUO policy requirement where the insured "repeatedly requested to reschedule the EUO to a mutually convenient date and time due to unavailability," the insurer refused, and the insured did not appear for the EUO). Instead, Nunez failed to present any evidence showing she "cooperated to some degree and/or

provided an explanation for [her] noncompliance which in turn created a question of fact as to whether there was a willful and material breach of the EUO provision." Himmel, 257 So. at 492.

Taking the position that the evidence presented at trial created a question of fact for the jury on whether she "willfully breached the terms of the Policy," Nunez contends (in her Reply)[6] that she "cooperated with [Universal's] investigation in all other respects." However, Nunez's compliance on other matters, e.g., promptly reporting the claim, allowing Universal to inspect her home, and providing a sworn proof of loss, does not bear on whether Nunez substantially complied with the specific, pertinent policy provision requiring her to submit to an EUO. See Edwards, 318 So. 3d at 16 (rejecting a similar argument by the insured in that case and explaining: "Cases evaluating whether 'some degree' of cooperation has occurred under Haiman have ho[m]ed in on whether there was some compliance with the condition precedent *that is the focus of an alleged breach*.") (emphasis added). Stated differently, actual compliance with other

_____

[6] There is no direct argument on this point in the Initial Brief, although Nunez argues broadly there was evidence to support the jury's verdict. See Brief for Appellant at 14 ("Judge Hanzman erroneously granted directed verdict in favor of Insurance Company because there was evidence that Homeowner's failure to sit for an EUO was not willful and there was no evidence that Insurance Company was prejudiced.") (emphasis added).

16

policy requirements or conditions is not evidence of substantial compliance with the pertinent policy requirement or condition at issue—in this case the post-loss obligation that Nunez must sit for an EUO.

Next, to the extent Nunez contends she offered an "explanation for her noncompliance," the only potential evidence on this point was her testimony that she received the letters, but informed someone—though unclear who—that her husband would not drive outside Miami. Even so, the EUO was set to take place in Aventura, which is within Miami-Dade County. Further, Nunez presented no evidence as to whether this concern was relayed to Universal or anyone else, or whether, based on her husband's alleged reluctance to drive too far, Nunez attempted to reschedule or relocate the EUO. Compare with Abdo, 302 So. 3d 926 and Himmel, 257 So. 3d at 492. Stated simply, there was no evidence or reasonable inference from the evidence which could create a question of fact for the jury to determine whether Nunez attempted to comply with her contractual obligation to appear for the EUO—an EUO that had to be unilaterally set after Universal received no response to its first two letters requesting that the EUO be set at a "mutually convenient date and time."

Finally, and significantly, we note that Nunez never argued to the jury that she substantially complied or attempted to comply with the EUO

17

requirement. Instead, Nunez simply maintained that it was unreasonable for Universal to request that she attend the EUO 110 days after she filed her claim. However, this is not a legally relevant argument to the question of Nunez's compliance with the EUO requirement.

Because the undisputed facts show that Nunez wholly failed to comply with her post-loss obligation to attend an EUO, and likewise failed to offer evidence of compliance or attempted compliance—or even a reasonable justification for the failure to attend—the trial court properly directed a verdict on whether Nunez materially breached the contract. The trial court also properly granted a new trial on whether Universal was prejudiced by the material breach where neither the parties nor the trial court had the benefit of our Estrada decision at the time of trial. Id. at 912 (holding, as a matter of first impression, that, upon the insurer establishing a material breach, the insured bears the burden to prove the insurer was not prejudiced by such breach).

**Conclusion**

We affirm the directed verdict on whether Nunez materially breached the contract, and, consistent with our holding in Estrada, we affirm the trial court's order granting a new trial on whether the insurer suffered prejudice as a result of the material breach.

18